Satish Rao
2421 Oregon St.
Berkeley, CA 94705
510-882-5324
Pro Se

IN THE JURISDICTION OF THE US DISTRICT COURT OF NORTHERN DISTRICT OF CALIFORNIA

SATISH RAO,
Plaintiff
vs. Professor John Canny
Dean Tsu-Jae King Liu
Dean Jennifer Chayes
Vice Provost Victoria Plaut
Vice Provost Janet Broughton
In their individual and official capacities.
Regents of the University of California.

Case # 3:25-cv-02385-LB
OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS

_________________________________/

May 7, 2025

**Table of Authorities**

**Cases:**

- Alvarez v. Hill, 518 F.3d 1152 (9th Cir. 2008)
- Davies v. Grossmont Union High Sch. Dist., 930 F.2d 1390 (9th Cir. 1991)
- Demers v. Austin, 746 F.3d 402 (9th Cir. 2014)
- Ex parte Young, 209 U.S. 123 (1908)
- Hafer v. Melo, 502 U.S. 21 (1991)

- Haines v. Kerner, 404 U.S. 519 (1972)
- Hebbe v. Pliler, 627 F.3d 338 (9th Cir. 2010)
- Hunter v. Bryant, 502 U.S. 224 (1991)
- Lachtman v. Regents of Univ. of Cal., 158 Cal. App. 4th 187 (2007)
- Martinez v. California, 444 U.S. 277 (1980)
- Mendocino Envtl. Ctr. v. Mendocino Cty., 192 F.3d 1283 (9th Cir. 1999)
- Supermail Cargo, Inc. v. United States, 68 F.3d 1204 (9th Cir. 1995)
- Wallace v. Kato, 549 U.S. 384 (2007)

**Statutes**

- 42 U.S.C. § 1981
- 42 U.S.C. § 1983
- 42 U.S.C. § 1985
- Title VI, Civil Rights Act of 1964
- Title VII, Civil Rights Act of 1964
- California Education Code § 66270
- California Government Code § 12940 (FEHA)
- California Code of Civil Procedure § 335.1

**Introduction**

Defendants motion to dismiss (MTD) rests on two faulty premises: that Plaintiff's claims are time-bared and fails to state a claim.

First, Plaintiff's claims are timely. Under federal accrual standards, claims accrue when the plaintiff knows of the injury, not when an administrative action is made effective. Plaintiff was not notified of the deceleration until August 2022, pursued internal appeals through August 2024, filed a complaint with California Civil Rights Division on April 5, 2023, and received a federal right-to-sue letter from the EEOC dated December 4, 2024 before timely (in 90 days plus standard 3 day provision for mail delivery) filing his complaint in federal district court on March 7, 2025. Equitable tolling during the CRD (California Civil Rights Commission) and Federal EEOC proceedings and the continuing violation doctrine as Rao continued to face hostile environment (e.g., facing intrusions from the administration with respect to student conduct cases) and in committee assignments to the present time, for example, and the retaliatory investigation by the office of prevention of harassment and discrimination (OPHD) concluded on June 26, 2023 (Williams v. Owens-Illinois, Inc., 665 F. 2d 918 - Court of Appeals, 9th Circuit 1982) confirm timeliness. Dismissal on limitations grounds is "rarely appropriate" at this stage. Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206–07 (9th Cir. 1995). The filing with CRD also tolls Title VII relief, and again, the filing was timely with respect to the June 26, 2023 notice of decision on OPHD's retaliatory investigation of Rao. While the employment consequence is not automatically tolled under §1981 (through §1983), Rao seeks the application of the Davies test (Davies v. Grossmont Union High

School Dist., 930 F. 2d 1390 - Court of Appeals, 9th Circuit 1991) with respect to his pending application to the Committee on Privilege and Tenure. This holds for process which have hearings and for which he was required to wait to file until the completion of his appeal which did not occur until August, 2024, and his meetings with Deans Liu and Chayes (re) scheduled on October 11, 2024 who promised address the issues but did not respond until a query from Rao on February 26, 2025 and eventually responded that they would not correct the situation on March 18, 2025 again raising the Committee on Privilege and Tenure. Rao filed a (second) grievance with the Committee on Privilege and Tenure on February 26, 2025 on the same date he asked Deans Liu and Chayes to please respond with respect to their promise in the October 11, 2025.[1] The application of the Davies test is fact intensive and not appropriate for dismissal at this stage. Moreover, given the continuing harm doctrine dismissal is not appropriate at this time without leave to amend. Furthermore, if any federal cause survives, Rao requests the court leave to amend for California causes under California FEHA as the same set of facts give Rao a claim to relief against the University under that statute and Rao's right to sue expires October 11, 2025 and for the sake of judicial efficacy.

Second, the first amended complaint (FAC) satisfies Twombly and Iqbal. Plaintiff alleges that he met all promotion standards under the Academic Personnel Manual, yet Defendants denied promotion based on undisclosed staff complaints, retaliated by initiating meritless investigations in response to Rao's complaints about Defendants proclaimed discrimination, and ratified

[1]Finally the Committee on Privilege and Tenure on July 10, 2025 accepted his complaint (in part) for investigation under the same allegations which had substantial overlap with the FAC in the previous grievance and this one.

unlawful decisions while shifting justifications. Such allegations are specific, plausible with respect to stating a claim for relief.

Shifting explanations are themselves are evidence of pretext. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000). For the Causes I through IV, facts are all supported by the files in the Academic Promotion case, emails, other writings, and the recording of the meeting between Rao and Defendants Liu and Chayes. Indeed, the extensive documentation make these causes ripe for summary judgment against Canny, Broughton, Liu and Chayes. Some discovery is likely need for Plaut with respect to being chair of Budget and Interdepartmental Relations (BIR) Committee and her final decision role in the Office of Prevention of Harassment and Discrimination (OPHD) complaints.

Furthermore, the FAC also alleges coordinated conduct across multiple administrators, sufficient to infer agreement under Mendocino Envtl. Ctr. v. Mendocino Cty., 192 F.3d 1283, 1301 (9th Cir. 1999). For causes V and VI (and onwards), the documented facts argue for discovery.

The motion to dismiss indicates the FAC confuses various statutes and their application to specific defendants and specific reliefs with respect to damages, declaratory or injuctive relief, this is harmless at this point:

"Notice pleading requires the plaintiff to set forth in his complaint claims for relief, not causes of action, statutes or legal theories," Alvarez v. Hill, 518 F.3d 1152, 1157 (9th Cir. 2008).

The facts presented in FAC to seek the claimed relief from the various defendants under more statutes than cited and asks the court to exercise its discretion to allow access to all available relief. For example, the Title VI claim on Cause 4 while valid (as, for example, Rao supervises students

receiving or eligible to receive federal aid and this supervision was harmed) could also be pursued under Title VII, and personal capacity claims could be pursued under §1981 (through §1983). Moreover, Rao asks the court to consider or allow Rao to amend the complaint to include the possibility state claims under California FEHA and California Education Code § 66270, Breach of Contract, and Common Law Torts. We ask the court to liberally construe these statutes to effectuate their remedial purpose in particular with pro se pleadings.

If proper notice with respect to specific statutes particularly adding the California statutes and remedies or if there are indeed deficiencies, we ask leave to amend as "Courts must allow pro se pleading liberally in order to do substantial justice". Haines v. Kerner, 404 U.S. 519 (1972); Hebbe v. Pliler, 627 F.3d 338 (9th Cir. 2010). Indeed, at this stage of the proceedings, given the vast differences in power and resources between the plaintiff and all the individual defendants and the University of California, liberal amendment should be allowed. The impact on their rights to notice should be weighted against the years long attacks and delays committed by them in the various processes that targeted Rao and immunized the Defendants.

The California Clauses are important to include as an avenue for relief as Rao's CRD Right to Sue was issued October 11, 2024 and Rao must file with respect to his California Claims by October 11, 2025 to be timely.

## Argument

**I. Eleventh Amendment Sovereign Immunity Does Not Bar These Claims**

While thhe Eleventh Amendment bars damages suits against the State and its agencies under, this principle does not dispose of Plaintiff's claims for several reasons:

- Prospective Relief Is Not Barred. Under Ex parte Young, 209 U.S. 123 (1908), claims for prospective relief against officials in their official capacities are permitted.
- Title VII and FEHA Are Not Barred. Congress abrogated sovereign immunity under Title VII, and FEHA applies to UC as an employer.
- Individual-Capacity Claims Are Not Barred. Damages against administrators in their personal capacities remain available. Hafer v. Melo, 502 U.S. 21, 30–31 (1991).

**II. The Court Should Construe the Causes of Action as Individual-Capacity Claims**

The FAC alleges claims against the individual defendants in both their official and personal capacities. To the extent there is any ambiguity, the Court must construe the complaint liberally in Plaintiff's favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

The Ninth Circuit recently confirmed that Section 1983 claims against university administrators may proceed in both their individual and official capacities. Jensen v. Brown, No. 21-16532, 2025 (9th Cir. 2025). Plaintiff seeks damages from administrators in their personal capacities, which

sovereign immunity does not bar, as well as prospective relief.

Moreover, Jensen v. Brown reaffirmed that district courts must evaluate the factual allegations under the court's knowledge of the precedents even where the complaint complaint does not cite the appropriate authority. Here, the FAC alleges facts that plainly state claims where relief is available under §1981, §1983, Title VII, Title VI, and California FEHA. The Court should therefore treat Causes 1–3 as proceeding against the individual defendants in their personal capacities, and analyze all allegations under the correct governing law and interpretation. Plaintiff apologizes for the additional burden to the court of having to deal with a pro se litigant.

Alternatively, we ask the court leave to amend to correct this and any other errors.

## III. Section 1983 Claims Are Properly Pleaded.

### A. Plaintiff Alleges Actionable Deprivations.

Due Process (Cause 3): Plaintiff was denied promotion based on undisclosed staff complaints, thus was never given the specifics sufficient to rebut. This violates procedural due process. (Board of Regents of State Colleges v. Roth, 408 US 564 - Supreme Court 1972)

All reviewers acknowledge that Rao had earned promotion according to the Academic Personnel Manual (APM) but for bullying behavior. There is no such reference in the APM (Academic Personnel Manual) but they reference "2019 Guidelines for Preventing Bullying" ("Guidelines.."). This document is not part of the APM which has provisions for punishment that go through the Committee on Privilege and Tenure not through the promotion

process. Moreover, "Guidelines..." asserts that anybody accused of bullying or demeaning behavior be apprised of specifics sufficient to "offer a rebuttal, explanation, or provide context.." This was not done.

Moreover, the APM has the power of statute in California. In Kim v. Regents of the Univ. of California, 80 Cal. App. 4th 160, 165 (2000), the Court of Appeal explained that UC policies "have the force and effect of statute." In Lachtman v. Regents of U.C., 158 Cal. App. 4th 187, 198 (2007), the court reiterated that the APM controls the academic employment relationship and binds UC in its employment decisions. More recently, Balakrishnan v. Regents of the Univ. of California (2024) reaffirmed that Regents' policies are construed according to their plain language and enforced as binding law. Thus, it is an abuse of discretion to not apply the conclusion that Rao met the conditions for promotion as specified in the APM itself.

Retaliation followed in the form of staff-complaint reliance (eventually Rao finds out the staff complaints are in response to his protected activity) and retaliatory OPHD investigation (also in reponse to his protected activity of filing an OPHD complaint.)

Thus, Rao's loss of promotion establishes had a property interest under the Fourteenth amendment.

Equal Protection (Cause 2): Canny admitted (in email writing to Rao) that he was discriminating in committee assignments due to Rao's Indian descent and his caste, direct evidence of unequal treatment.

First Amendment (Cause 1): Plaintiff engaged in protected faculty speech on matters of public concern (administrative costs, use of the GRE, etc.). Demers v. Austin, 746 F.3d 402 (9th Cir. 2014). Chair Canny explicitly admits the relevant emails as a reason for Rao's decceleration in the OPHD

investigation. (FAC: ¶132.)

### B. Defendants Are "Persons."

The Regents may not be "persons" under §1983, but individual administrators are in their individual capacities. Hafer v. Melo, 502 U.S. at 30.

## IV. Qualified Immunity Does Not Apply

### A. Defendants Are "Persons" in the individual capacity.

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991).

Rao asks that all causes relevant to individual be considered as individual capacity causes as the FAC suggest.

#### i. With respect to Canny.

- Canny proclaimed that he was discriminating against Rao vis a vis committee membership due to Rao's Indian origin, justifying it by noting that racism requires anti-racism. (FAC: ¶195.)

- Canny's departmental letter admitted Plaintiff met APM criteria but denied promotion anyway referencing the non-APM document "2019 Guidelines for the Prevention of Bullying" (FAC: ¶110) Moreover, Canny did not provide detail of the allegations under the presumed authority of "Guidelines.." despite it requiring providing Rao sufficient documentation to "offer a rebuttal, explanation, or provide context." (FAC: ¶111)

- Canny is fully aware that the APM establishes rights and privileges and responsibilities for all faculty. All faculty are fully apprised of this fact.

- Canny acted with reckless disregard in not adhering to the APM and even if he mistakenly uses the alternate authority ("Guidelines...") to punish Rao, he does not follow the basic duty to provide sufficient documentation for Rao to rebut the charges as specified in ("Guidelines...").

- Canny admitted to attacking Rao for his speech, specifically, attempts to "pull him offline". (FAC: ¶138.)

- The OPHD found that Canny decelerated Rao for staff complaints (retaliation for Rao's protected activity) and for Rao's first amendment speech (referencing marked up emails). (See FAC: ¶132.) The claims regarding committee meetings are demonstrably false as Rao did not attend committee meetings with these staff during the relevant times without being accompanied by Chair Demmel and Bokor who reported no issues.

- Canny was dishonest in his testimony to OPHD on many fronts. See for example, FAC:¶136 where Canny accuses Rao of 'racist thinking' justifying it with a false allegation regarding a non-existent project, and further in FAC: ¶137 where he asserts Rao is not humble again providing misleading information on Rao's willingness to apologize. This is malicious.

Canny's acted with reckless indifference, malice and oppression. Admittedly, he believes himself noble, indeed, he believes himself "anti-racist".

Indeed, what could be more noble?

Still, that belief does not excuse his abuse of Rao's rights under the law.

**ii. With respect to Chayes, Liu, Broughton and Plaut: Promotion and Appeal.**

Chayes, Liu, Broughton, and the BIR (chaired by Plaut) know of all these actions by Canny as Rao submitted a detailed response to Canny's departmental recommendation. (See FAC:¶109 where Rao's 484 page submission is reference by the letter of Dean Liu and Chayes). Various subsets of the defendants proceeded to add and support spurious charges as follows:

- They added the accusation Rao "creating a hostile environment" but reverted to using Canny's accusation of "bullying" under the authority of "Guidelines ..." so they could rephrase as "not meeting promotion" standards rather than punishment (See FAC:¶110). This is evidence of shifting.

- They variously add allegations that Rao made "personal attacks on administration" and uncollegiality without details. See FAC:¶112, Page 23.

- They endorse or add allegations of "lack of collegiality toward faculty and staff"without specifics. (FAC:¶109.)

- Are well aware of Canny's actions or should be as Rao provided a detailing of the same in response to Canny's departmental recommendation.

- They chose to do this in the promotion process rather than the other

avenues available through the APM using "Guidelines..." as an authority despite it not being part of the manual at all.[2]

- All of Broughton, Liu, Chayes are highly compensated and highly staffed as Deans and Provosts in part to do exactly these evaluations. The primary duty of the BIR (chaired by Plaut) is to perform evaluations for appointments, promotion and tenure and they are or should be fully aware of their duties under the APM and basic constitutional and statutory rights of employees, especially with regard to due process and non-discrimination.

All defendants were directly involved in issuing their own recommendations and decisions that Rao should be decelerated which is according to the MTD is the gravaman of Rao's claim here. They all should understand relevant rights and authorities in this context to not do so while harming Rao shows reckless indifference, malice or oppression. Thus, they are not entitled to qualified immunity in this instant. Certainly not at the pleading stage with these facts.

Notably these facts are fully supported in writings in the Academic Promotion file and thus more a candidate for summary judgment than for dismissal.

**iii. With respect to Plaut as OPHD final decision maker.**

There was an OPHD investigations of Heather Levien and John Canny due to complaints by Rao, and then a retaliatory investigation of Rao by OPHD

[2]Not in the FAC is the fact that "Guidelines..." was presented for endorsement to the Divisional Council of the Academic Senate. While some found its intent admirable, the document did not get endorsed by the Committee to be considered for inclusion in the APM. This would have been the very first Academic Senate action in a long process to be included in the APM and it failed there.

for gender discrimination.

As described in FAC:¶116-155, the investigations and conclusions were problematic and we ask the court to weigh this and won't repeat it in detail here. But the facts in the FAC, the investigations of Canny and Levien indicate dishonesty and make conclusions that clear Canny and Levien that don't fit the actual content of the report, though the investigator (Martha Phillips) did conclude that Rao was harmed and proceeded in good faith. Rao expects the investigator is trying, but the investigator's supervisor Elizabeth Rome determined the conclusion even while the investigator included information in the report that undermines it. Notably, Rome is the one that rejected Rao's repeated requests to investigate retaliation (which is more the Dean's responsibility) rather than Levien's intent with respect to making the false and defamatory statements about Rao. Notably also, Rome has a long land acknowledgment in her emails, making Rao feel that the process could be influenced by politics. Certainly, the Code of Conduct for the court would not allow such political posturing. Finally, Rome seemed to believe Levien had made her false and defamatory statements in good faith, prior to any investigation.

Again, the findings on Canny and Levien are implausible, and the investigation of Rao was retaliatory to Rao's protected activity of filing his complaints to OPHD. Indeed, during the months long investigation, the investigator demanded student records from Rao which the complainant would then have access to which would violate FERPA. Thus Rao refused to provide records of other students, despite the threat that this withholding would be viewed as evasive. The complaint against Rao had no basis and was filed days after the Notice of Outcome on the previous cases. The investigator

(after subjecting Rao to a nine month investigation) concluded, as was clear, that there was no harm to the student and that there was no basis for investigation. This was clear a priori as the complaining student got the grade she wanted, but she complained about a male student who got a different grade and one that she did not want or need or ask for. Its a bizarre complaint under a prima facie standard. Notably according to public sources only 6% of complaints move to investigation. See FAC:¶116-155.

Plaut received substantive input from Rao and took many months before issuing a final decision in each case. She is well aware of the issues and finds no violation of policy in the cases. Again, one expects that even if one (implausibly) believe Canny's testimony to OPHD that he lied to Rao about discriminating against him, that telling someone you are discriminating against them due to the ethnicity and even their caste is still problematic. And of course, Canny did discriminate, he discriminated openly and proudly in the service of "anti-racism".

Plaut is responsible for all of this. She had all the reports, months to review them, is highly staffed, and is highly compensated (the 12th highest paid person on campus in 2023 out of roughly 40000 employees, only 12th because the top 6 are Athletic Coaches or Managers). She should be held responsible for the final judgment on both decisions as well perhaps for how the office does its business.

**C. Retaliation as evidenced by Recorded meeting.**

Very late in this six year and counting ordeal on October 11, 2024, Rao was finally given clarity on the specific reason for his deceleration. Lo and behold, the decceleration ultimately retaliation for Rao's protected activity and

thus implicates all defendants under retaliation clauses under the Fourteenth Amendment, Section 1981, FEHA, and other California clauses.

In particular, recording of Rao's October 11, 2024 (recorded meeting) meeting with Deans Liu and Chayes finally reveals the specific action for which Rao was decelerated. Moreover, it adds facts that support individual capacity responsibility under Section 1983. This is discussed in FAC: ¶30-65 and illustrated in the recording itself (Exhibit A). Notably, this interview itself is abusive in that false or misleading allegations are continually forwarded by the Deans.

Briefly, the Deans first noted that Rao was decelerated for submitting written questions in a process to address Rao's protected complaint regarding staff's defamatory and false allegations against Rao. The Deans realizing that this was an attack on Rao's legal rights, switched to other reasons. The FAC speaks to this in detail and the recording (exhibit A) itself illustrates the Dean's knowledge and indeed attempts at oppression. The maliciousness of this is perhaps justified to the Deans to maintain a posture of protector of staff. But Rao did not attack staff, he is nice to staff as he argues in the recorded meeting. The powerful abusing the less powerful are the Deans abusing Rao as can be seen. Rao has no control over staff, and in particular does not interact with these staff. He does feel bad that they are scared, but that is on the Deans, not him. He always only wanted truth and reconciliation.

During the meeting, Dean Liu shifts her reason to another easily falsifiable justification as well.

The Deans show themselves to have reckless disregard for Rao's legal rights in the recording, and reveal that the entire promotion process is in-

fected by reckless disregard to being truthful. Rao had suspected this was the reason and had submitted this in his promotion case, and thus all defendants showed similar reckless disregard.

Given the fact that the meeting was recorded and the various admissions of the Deans, this seems ripe for summary judgment rather than cause for dismissal.

## V. Title VI Claim Should Proceed, or Leave to Amend for Title VII

Defendants argue Title VI does not cover employment. But Plaintiff's role as Principal Investigator on federally funded grants ties his employment directly to federally funded programs. At minimum, the allegations overlap with Title VII, under which sovereign immunity is abrogated.

Thus, the Title VI claim should proceed or leave to amend should be given. In addition, the Court should grant leave to amend to expressly plead Title VII.

## VI. Plaintiff's Claims Are Timely

Defendants' statute of limitations argument fails:

- Accrual at Notice (Aug. 2022). Plaintiff was not notified of deceleration until Aug. 2022. Wallace v. Kato, 549 U.S. at 388.

- Continuing Violation (through Aug. 2024). For example, OPHD actions concluding June 23, 2023 extends §1981 (through §1983). Continuing harassment via interference with student conduct cases continue.

- Tolling During CRD/EEOC. Filing in Apr. 2023 and right-to-sue Dec. 2024 tolled limitations on Title VII. Johnson, 421 U.S. 454; McDonald, 45 Cal. 4th 88.

- Equitable Tolling. Plaintiff pursued remedies diligently and notice to all parties is given. Addison v. State of Cal., 21 Cal. 3d 313.

- Dismissal Premature. Ninth Circuit: SOL dismissal "rarely appropriate." Supermail Cargo, 68 F.3d at 1206–07.

## VII. Retaliation and Conspiracy Are Statutory and Plausible

### A. Immunities Do Not Apply.

Gov. Code Section 815 bars common law torts, not statutory federal claims. Martinez v. California, 444 U.S. 277, 284 n.8 (1980).

### B. Retaliation (Cause 5).

- Protected activity: Plaintiff filed complaint against Canny.

- Adverse action: OPHD immediately initiated meritless investigation without showing of harm.

- Causal link: Timing, lack of basis, and Plaut's ratification.

- Violates Title VII, FEHA, Section 1983 and Section 1981.

### C. Conspiracy (Cause 6).

We note the FAC should have written the cause with respect to Does 1-100 to be clear, and apologizes for using a mathematical frame to deal with the notion that Cause 6 applies to various subsets of people.

- Agreement shown through overlapping actors, ratifications, shifting rationales.
- Overt acts: Canny's deceleration, OPHD's investigation, Robinson's pressure on chairs, Plaut's ratification, Liu/Chayes shifting justifications.
- Conspiracies are secretive; circumstantial evidence suffices. Mendocino, 192 F.3d at 1301.

At minimum, Plaintiff requires discovery to test these allegations, which are uniquely within Defendants' control.

## IX. Illegal pattern and practice with Personnel File.

As noted in FAC:¶106, Rao was threatened with employment consequences with sharing his personnel file with anyone other than agent, or counsel. The assertion is that Rao's copy is university property.

On August 18, 2025, Rao received an email from Heather Archer in the Academic Policy Office that stated:

*Dear Professor Rao,*

*I write to inform you that UC Berkeley no longer restricts the sharing of your personnel file with others. No disciplinary action will be taken against you for sharing the file, should you wish to do so.*

*Regards,*

*Heather Archer, Assistant Vice Provost Academic Personnel Office.*

As illustrated in the FAC, Rao attempted this at length, pursuing the file through the California Public Records Act as well as arguing using the

California codes. The University violates the law with respect to both the CPRA and employment rights unless faced with the prospect of discipline from outside agencies.

Thus, the University who abuses the rights of employees as policy unless held to account by outside authorities. The court's jurisdiction is critical for Rao to have any hope of even being afforded his constitutional rights and relief from having them be abused.

## X: Harms and Remedies

Rao was perhaps at the peak of his academic knowledge six years ago. The tradeoff between increasing knowledge and decreasing mental acuity at Rao's age is significant. The hostile environment, having to answer and defend himself from the attacks in the promotion processes and retaliatory OPHD process and trying to pursue remedies through OPHD and various avenues has made focus on his academic pursuits difficult. To Rao, no amount of money compensates him for the lost years. Still, Rao is entitled to pursue all possible relief including restoration of position through injuctive relief and compensatory damages. The actions of the defendents in both official and personal capacities are egregious and even punitive damages sufficient to deter such behavior should be available.

Further, Rao, due to his role as scheduling officer where he observed a shortage in funds for teaching, was actively studying and pursuing a campaign to address administrative expense beginning a decade ago. It was and is out of control, at this point, reaching over 1.3 Billion dollars in non-academic staff salary alone (contrasted with 900 M for academic staff which include all faculty and non-faculty instructors, research staff, postdocs, teach-

ing assistants and graduate student researchers). This amounts to over 30000 dollars for every Berkeley student in non-academic staff salaries alone. While we need services, for example, we need the registrar and admissions, those salaries are in the single digit millions range. Indeed, Rao's speech on this topic is one of the things Canny attacks. Moreover, having to deal with this situation has derailed Rao's pursuit his public service activity. Indeed, this distraction may delight of the higher administration, who are responsible for these expenditures. Nonetheless, part of faculty roles is governance and contributions can be used in promotion cases in the service component. These attacks limit Rao's ability to fulfill this role which is his right and even at this point an ethical responsibility to pursue given what he knows. Again, relief may well allow Rao to properly pursue this.

Furthermore, the actions of the defendents from Levien, to the Deans, to the BIR, to the OPHD, is should not be viewed in isolation. The policies and actions of the regents have setup a climate where constitutional freedoms have become secondary to adherence to University posturing. For example, the regental policy 4400 on diversity led to the adjustments to APM-210-1-d (the policy that rules promotion) to replace non-discrimination to read as diversity, equity and inclusion. Indeed, this engendered the requirement that applicants submit DEI statements evaluated by the Berkeley Rubric, which for example, gives the lowest rating to any applicant who notes that working hard is helpful in overcoming adversity. Even now, after the removal of DEI statements (via edict of UC President Michael Drake in response to fear of Trump), every faculty search is required to have an "equity officer". While again, discrimination is something to be careful of, the "equity" officer's role has been to evaluate and comment on the attitudes of candidates with respect

to equity, diversity and inclusion. It recalls the concept of a political officer in communist countries.

This is a climate where staff's false accusations of racist behavior against Rao are fraught. Notably, the staff made these allegations due to Rao's assignment to evaluate metrics for admission (including the GRE). In our environment, the GRE is at times openly called racist. This concern perhaps is why OPHD forgives the fact that Levien's accusations are false and defamatory. Her cause is after all a noble one.

Notably, Plaut's academic expertise is diversity, equity and inclusion. Both OPHD and the Office of Faculty Equity and Welfare are in her purview and she was chair of BIR when they recommended decceleration. OFEW's director, Karie Frasch, is integrally involved in the DEI requirement on faculty search and also was involved in advising Chair Wagner on how to deal with Rao's complaint regarding Canny's proclamation that he discriminated against Rao. While there is a legitimate role for OFEW in non-discrimination, running faculty searches, and preserving rights say under the constitution and the APM, the office has turned into a political office even now seeking to insert DEI ideology into evaluations of research, teaching and service. And also in forgiving abusive actions as long as they are in the name of "anti-racism".

This is the climate where the rights of employees including political freedoms and constitutional rights, such as due process or freedom of speech, is secondary to adhering to this dogma. This sounds like ranting. Well, it is ranting. Still, Canny openly proclaimed his discrimination against Rao as fully justified by "anti-racism", admitted to attacking Rao for his speech, yet all the named defendants and numerous others with full knowledge allowed

him to continue to have control over Rao's career advancement and cleared him of responsibility for his abusive behavior toward Rao. Levien's false and defamatory statements are fine as she was fighting the use of the GRE, which of course, is racist.

The use of the "Guidelines for preventing ..." and its application to Rao is of the same piece. What is important is that the staff felt bad, not that the actions that Rao took were wrong. Indeed, all the defendants felt no need to provide Rao with the specifics of his behavior for nearly six years. After all, the staff unarguably felt bad, why discuss the details of Rao's actual behavior (even if it is protected activity.) To be sure, Rao is sorry that the staff feel bad, but views this as incompetent management, ultimately by Dean Liu. From the beginning, Rao wanted truth and reconciliation, or just to "hug it out". Simply asking for the truth, with full knowledge that it would resolve the situation would have avoided years of the staff feeling bad.

Truly, the defendents are not fundamentally evil. Still, they decided posturing about protecting the less powerful (or appearing to) is well worth abusing Rao's legal rights. The court would do the University a favor to remind it and its high level administrators of their duties to respect the constitutional rights of their employees (or prospective employees). Injunctive and declaratory relief is thus warranted. If that is not available, other damages may send the message just as well.

Really, Rao prefers his "white saviors" to actually help people, rather than just throw tantrums. Perhaps his willingness to say so is what put him in this mess, nonetheless he is entitled to his rights and this matter should not be dismissed.

Regardless, the continuing context of diversity, equity and inclusion pro-

vides cover and context for Rao's continuing treatment due to his speech on this topic and on the administrations egregious spending (as evidenced by vague allegations that he attacks on administrators, see FAC:¶112) in retaliation for his protected activity and in getting fairly evaluated various University contexts including the BIR, OPHD, and the Committee on Privilege and Tenure and his ongoing subsequent promotion case which has not been attended to for years.

## XI: Conclusion

Defendants' motion should be denied. Plaintiff's claims are timely, plausible, and supported by Defendants' own admissions and a large body of documentary evidence. The FAC alleges specific facts showing discriminatory, retaliatory, procedurally deficient conduct, and repeated attacks that suggest conspiracy among administrators to harass Rao and deny Rao his rights.

At a minimum, if the Court finds any cause insufficiently pled, Plaintiff respectfully requests leave to amend to clarify statutory bases or add factual detail, consistent with Rule 15's liberal standard and Ninth Circuit precedent.

Further, Plaintiff asks leave to amend the causes under California FEHA, and California Section 66270 and Section 1981, Title VII, and any other relevant federal statutes as the facts support findings that these Rao is deserving of relief under these statutes and for judicial efficiency.



Satish Rao

Pro Se