United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

SATISH RAO,

Plaintiff,

v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

Defendants.

Case No. 25-cv-02385-LB

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: ECF No. 44

## INTRODUCTION

Plaintiff Satish Rao, a tenured professor in UC Berkeley's Computer Science Department who is proceeding pro se, sued the Regents of the University of California and five administrators, alleging discrimination based on his Indian descent, retaliation for protected speech, due-process violations, and conspiracy to violate his rights. The claims arise from his participation in a 2018 analysis of graduate admissions, resulting in allegedly unfounded staff complaints that he misused admissions data to argue against admitting underrepresented minorities. As a result, he allegedly suffered "deceleration" of a promotion (a half-step promotion increase rather than a full-step increase), exclusion from two committees for discriminatory reasons (an undergraduate study committee and an equity-and-inclusion committee), and a retaliatory investigation.

In the operative complaint, he asserts claims under 42 U.S.C. § 1983 (retaliation for his assertion of protected speech in violation of the First Amendment to the U.S. Constitution and

United States District Court
Northern District of California

denial of his due-process and equal-protection rights in violation of the Fourteenth Amendment), § 1985 (conspiracy), Title VII of the Civil Rights Act of 1964 (race/national origin discrimination and retaliation), and California's Fair Housing and Employment Act (FEHA), Cal. Gov't Code §§ 12940(a), (h)–(k) (discrimination, retaliation, and harassment/hostile work environment).

The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that (1) the §§ 1983 and 1985 claims are barred by the two-year statute of limitations, (2) the Title VII claims are barred for failure to file charges with the EEOC within three hundred days of the date the plaintiff became aware of injuries, (3) the individual defendants cannot be held personally liable for claims of discrimination or retaliation under Title VII or FEHA, (4) there was no deprivation of a property interest or lack of due process, and (5) no plausible allegations support harassment under FEHA. The individual defendants are not employers, and thus the Title VII and FEHA claims against them for discrimination and retaliation are dismissed. The motion otherwise is denied. The deceleration decision was final only in August 2024, within the two-year statute of limitations and the three-hundred-day period. The plaintiff sufficiently pleads a disciplinary denial of a promotion without notice of the factual predicate or an opportunity to rebut it. The alleged harassment may prove to be an employment decision, not actionable harassment, but that issue is deferred to summary judgment.

**STATEMENT**

The plaintiff is a U.C. Berkeley professor. The defendants are the U.C. Regents, John Canny (Chair of the Computer Science department), Tsu-Jae King Liu (Dean of the College of Engineering), Jennifer Chayes (Dean of the College of Computing, Data Science, and Society), Janet Broughton (Interim Vice Provost), and Victoria Plaut (Chair of the Budget and Interdepartmental Committee and Vice Provost of the Faculty).[1]

---

[1] Second Am. Compl. (SAC) – ECF No. 38 at 10–11 (¶¶ 25–31). Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the tops of documents.

United States District Court
Northern District of California

**1. The Graduate-Admissions Study and Subsequent Investigation**

In September 2018, the plaintiff, who served on the Undergraduate Study Committee, was asked to analyze graduate-admissions data correlations (GRE scores, letter scores, reviewer scores, associations with prelim exams, and other measures).[2] In December 2018, staff members allegedly falsely accused him of misusing the data to support not admitting underrepresented minorities. As a result, in December 2018 to January 2019, the plaintiff complained to his department chairs and deans. An investigation resulted.[3] The committee chairs, the plaintiff, and an ombudsperson agreed that the plaintiff could proffer written questions to staff regarding the allegations, which he did in March 2019. On May 24, 2019, the investigation chairs told the plaintiff that the staff refused to answer the questions and were hostile to the plaintiff.[4] In July 2019, the plaintiff complained formally to Dean Liu that he believed that the staff's "defamatory statements" (about his alleged bias about minority admissions) were in part due to his South Asian ancestry because the relevant person had objected previously to another faculty of South Asian descent (but had no issues for five other faculty members of European descent).[5] Dean Liu sent a letter on January 27, 2020, saying that the investigation was closed.[6]

**2. Professor Canny's Actions Regarding Committees and Policies**

In September 2019, Professor Canny declined to reappoint the plaintiff to the Undergraduate Study Committee, gave no reasons when asked, and said in a subsequent investigation that he acted based on unspecified staff complaints about the March 2019 written questions.[7] On September 11, 2020, the plaintiff asked to serve on the Equity & Inclusion Committee, citing his four years' work at Berkeley High on achievement-gap initiatives. Professor Canny said he didn't

---

[2] *Id.* at 2 (¶ 3), 13 (¶ 39) (name of committee).

[3] *Id.* at 2 (¶ 3), 12 (¶¶ 33–34).

[4] *Id.* at 12 (¶¶ 35–36).

[5] *Id.* at 2 (¶ 3), 12 (¶ 37).

[6] *Id.* at 13 (¶ 38) (refers to 2027) & Letter, Ex. 9 to *id.* – ECF No. 38-2 at 243 (dated in 2020).

[7] SAC – ECF No. 38 at 13 (¶ 39).

United States District Court
Northern District of California

want someone "specifically . . . from the caste Rao is presumed to be from," and "specifically used the word 'majority' for Indians." The plaintiff responded that he was an American from the Deep South with broad experience as a minority and asked for a non-discriminatory reason. Professor Canny responded, "Yes, it's discriminatory. So is racism and also so is anti-racism."[8]

On April 21, 2021, Professor Canny sent the plaintiff a document with hundreds of pages of marked-up emails, largely discussing public and university policy such as remote proctoring, the diversion of funds to the administration from teaching, the use of the GRE, and other topics. The plaintiff complained to the chair of the investigation (see previous section) that this was harassment, and Professor Canny stopped (but later used the emails to argue for deceleration) (discussed in the next section).[9]

**3. Promotion Issues**

Under University policy, U.C. Berkeley's promotion process requires a candidate's statement, the department chair's recommendation, the candidate's response, a review by the Budget and Interdepartmental Relations committee, a decision by the Vice Provost for Faculty (sent to the deans), and a communication from the deans to the candidate's chairs.[10] The plaintiff submitted his materials on October 26, 2020.[11]

On July 13, 2021, Professor Canny sent his department-chair letter recommending a half-step increase effective July 1, 2021, to Professor, Step VI.5. The review was "mixed with two significant areas of concern: research and service/interaction with colleagues. On the positive side, [Rao's] teaching contributions have been exceptional." Professor Canny references the plaintiff's education, professional career at Berkeley beginning on January 1, 1999, his promotions (including to full professor on July 1, 2004), and his last review, resulting in advancement to Step VI, effective July 1, 2018 (reviews are on a three-year cycle). He referred to the plaintiff as a

---

[8] *Id.* at 13–14 (¶ 42).
[9] *Id.* at 13 (¶ 40).
[10] *Id.* at 14 (¶ 43).
[11] *Id.* (¶ 44).

world-renowned researcher in combinatorial algorithms, known for an intuition leading to breakthroughs on important problems.[12] He described the plaintiff's teaching load, more than double the department norm for undergraduate teaching, a "tremendous value to the department, especially given Rao's great flexibility in the courses he was willing to teach," often filling holes where no other instructor was available. He mentioned that the plaintiff had postponed his sabbatical for six years and should take it, which would help him focus his attention on his research.[13] He reviewed his course work and quoted student reviews.[14] He reviewed the plaintiff's committee work, noting a challenging one-year role as scheduling officer, recent service on the Undergraduate Service Committee, and service for the last two years on the Graduate Matters Committee. "His data-driven efforts challenged various policies . . . ." He spent the last year on the department Executive Committee, continued to serve on the Admissions Committee, and recently completed service on the Academic Senate Divisional Council, where he channeled his passion for the teaching mission to effect change around campus resources and policy, investing a significant amount of time and energy.[15]

The letter notes the plaintiff's positive committee contributions but describes his interaction with staff as "well less than professional." It states that "details of these interactions will not be recounted here" but describes the interactions as more than disagreements and instead demeaning, thereby eroding staff morale. The conduct "substantially interfered with these staff's ability to perform their duties, and on their willingness to continue to serve on those committees."[16] The interactions were "repeated by a large number of staff and occurred in both private and public situations (i.e. in committee meetings witnessed by many faculty and staff)." This put the plaintiff's

[12] Letter, Ex. 3a to *id.* – ECF No. 38-2 at 39. The complaint summarizes parts of the letter. SAC – ECF No. 38 at 15–16 (¶¶ 47–48).

[13] Letter, Ex. 3a to *id.* – ECF No. 38-2 at 40.

[14] *Id.* at 41–43.

[15] *Id.* at 44.

[16] *Id.*

service "well below" department standards, which was the basis for the recommendation for the half-step deceleration.[17]

On September 20, 2021, the plaintiff sent Professor Canny a Google form with questions about the recommendation, cc'ing two former department chairs. Professor Canny largely did not respond except for saying that three staff members reported incidents involving "verbal intimidation, threats of reports to campus committees, and allusion to legal action." "As later revealed by Dean Liu, these were the questions proffered by Rao during his protected activity," meaning, the questions propounded with the ombudsperson for the previously-discussed investigation.[18] The plaintiff then prepared a statement about Professor Canny's "explicit discrimination, the lack of specifics, the attack on his speech, and the process around the false accusations by staff."[19]

On January 30, 2022, Dean Chayes (with Dean Liu concurring) wrote that the plaintiff's contributions supported the normal one-step increase but concurred with the half-step recommendation because the plaintiff's actions created a hostile work environment, violating guidelines against faculty bullying and other demeaning/disruptive behavior.[20]

In the next step of the process, on June 23, 2022, the budget committee evaluated the plaintiff's research as good (disagreeing with Professor Canny with a nuanced (and positive) discussion of the plaintiff's research), described the plaintiff as a dedicated teacher, and joined the recommendation of a half-step increase based on the interactions with staff.[21] Vice Provost Broughton approved the half-step increase, noting that the allegation that the plaintiff created a hostile work environment required an investigation. On August 5, 2022, Deans Chayes and Liu issued their letter with the recommendation for a half-step increase based on the alleged interactions with staff.[22]

---

[17] *Id.*

[18] SAC – ECF No. 38 at 15–16 (¶¶ 46–48). The meeting was recorded. Recording, Ex. 2 to *id.* – ECF No. 38-2 at 36.

[19] SAC – ECF No. 38 at 16 (¶ 49) (cleaned up).

[20] *Id.* (¶ 50).

[21] *Id.* at 17 (¶ 52); BIR Letter, Ex. 3c to *id.* – ECF No. 38-2 at 50–53.

[22] SAC – ECF No. 38 at 17–18 (¶¶ 53–54); Letter, Ex. 3d to *id.* – ECF No. 38-2 at 55–57; Letter, Ex. 3e to *id.* – ECF No. 38-2 at 59–61.

A reconsideration process followed, starting in August 2022 and ending with the final denial of reconsideration on August 12, 2024: (1) on October 26, 2023, Dean Chayes, with Dean Liu's concurrence, reaffirmed the previous recommendation of a half-step deceleration; (2) the budget committee did the same on May 28, 2024; and (3) the final denial of reconsideration by Vice Provost Broughton was on August 12, 2024. A post-decision meeting with Deans Liu and Chayes took place on October 11, 2024.[23] On February 26, 2025, apparently as a result of a communication following that meeting about his available remedies, the plaintiff filed a grievance with the University's Committee on Privilege and Tenure.[24] The half-step deceleration rendered the plaintiff ineligible for a "good standing salary adjustment," which required him to refund $7,000.[25]

**4. Other Allegations Regarding Investigations**

In September 2021, the plaintiff filed a formal complaint against Professor Canny for refusing him committee work and the staff member who accused him of bias during the data analysis discussed in section 1.[26] He provides a detailed timeline.[27] In November 2022, U.C. Berkeley's Office for Prevention of Discrimination and Harassment concluded that Professor Canny's conduct did not violate the nondiscrimination policy and addressed the bias allegations lodged by the staff member about the data analysis discussed in section 1, supra.[28]

The plaintiff alleges that an investigation against him for alleged gender discrimination, that he was notified of in November 2022, was retaliatory. In May 2023, the committee concluded that the complaint was baseless, resulting in a final decision on June 26, 2023.[29]

---

[23] SAC – ECF No. 38 at 27 (¶ 70); Letter, Ex. 4a to *id.* – ECF No. 38-2 at 65; BIR Letter, Ex. 4b to *id.* – ECF No. 38-2 at 67–68; Letter, Ex. 4c to *id.* – ECF No. 38-2 at 70–71.

[24] SAC – ECF No. 38 at 28 (¶ 72(3)).

[25] *Id.* at 3–4 (¶¶ 5–8) (citing the Acad. Pers. Manual, Ex. 15 to *id.* – ECF No. 38-2 at 276 (¶ 1)).

[26] *Id.* at 5–6 (¶¶ 11–16), 27 (¶ 71); Reps., Exs. 5a & 5b to *id.* – ECF No. 38-2 at 74–205.

[27] Timeline, Ex. 1 to *id.* – ECF No. 38-2 at 5–34.

[28] SAC – ECF No. 38 at 5 (¶¶ 13–14), 27 (¶ 71(2)); Rep., Ex. 5b to *id.* – ECF No. 38-2 at 150, 200–05; *see, e.g.*, Rep., Ex. 5a to *id.* – ECF No. 38-2 at 82–87, 144–48.

[29] SAC – ECF No. 38 at 6–7 (¶¶ 18–21), 27 (¶ 71(3)–(4)); Rep., Ex. 5c to *id.* – ECF No. 38-2 at 207–28.

United States District Court
Northern District of California

**5. Procedural History**

The plaintiff filed a complaint with the California Civil Rights Department on April 5, 2024. On December 4, 2024, the EEOC issued a right-to-sue letter.[30] He filed this lawsuit on March 7, 2025.[31] The operative complaint has the following claims: (1) First Amendment retaliation, in violation of 42 U.S.C. § 1983; (2) a violation of his Fourteenth Amendment right to procedural due process, in violation of § 1983; (3) a violation of his Fourteenth Amendment right to equal protection, in violation of § 1983; (4) conspiracy to deny his civil rights, in violation of *id.* § 1985; (5) discrimination and retaliation, in violation of Title VII; (6) retaliation in violation of FEHA, Cal. Gov't Code § 12940(h); (7) harassment in violation of FEHA, *id.* § 12940(j); (8) aiding and abetting, *id.* § 12940(i); (9) failing to prevent discrimination, harassment, and retaliation, in violation of FEHA, *id.* § 12940(k); and (10) discrimination in violation of FEHA, *id.* § 12940(a).[32]

All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c)(1).[33]

## ANALYSIS

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It may fail by lacking a cognizable legal theory or sufficient facts under one. *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). The court accepts factual allegations as true and construes them favorably to plaintiffs. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). But allegations must state a plausible claim. *Twombly*, 550 U.S. at 570. Federal courts construe pro se complaints liberally. A pro se plaintiff need only plead facts showing that he may have some entitlement to relief, not the specific legal theories. *Hearns v. Terhune*, 413 F.3d 1036, 1040–41, 1043 (9th Cir. 2005).

---

[30] SAC – ECF No. 38 at 27–28 (¶ 72), 36 (¶ 107).

[31] Compl. – ECF No. 1.

[32] SAC – ECF No. 38 at 28–38 (¶¶ 73–121).

[33] Consents – ECF Nos. 6, 24.

United States District Court
Northern District of California

The motion to dismiss raises the following issues: (1) whether the two-year statute of limitations bars the civil-rights claims; (2) whether the plaintiff filed a timely administrative claim within three-hundred days of the allegedly unlawful employment practice; (3) whether the claims for discrimination and retaliation under Title VII and FEHA are barred against the individual defendants because they are not employers; (4) whether the plaintiff plausibly states a due-process claim; and (5) whether the plaintiff plausibly pleads FEHA harassment. The Title VII/FEHA claims against the individual defendants for discrimination and relation are dismissed. The motion otherwise is denied because the plaintiff plausibly pleads claims.

**1. Statute of Limitations for Civil-Rights Claims — Claims One Through Four**

The parties do not dispute that the statute of limitations is two years. Cal. Civ. Proc. Code § 335.1; *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). There are three possible adverse employment actions: (1) the half-step salary deceleration (with the final decision issued in August 2024 or possibly October 2024); (2) the denial of the plaintiff's request for appointment to the UC Berkeley committees in September 2019 (followed by plaintiff's formal complaint and a denial of the complaint in November 2022); and (3) the investigations against the plaintiff (initiated in November 2022 and concluded in May 2023, when they were determined to be unfounded).

A cause of action in the employment context accrues on awareness of the actual injury, i.e., the adverse employment action. *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1049 (9th Cir. 2008); *Del. State Coll. v. Ricks*, 449 U.S. 250, 252, 257–58 (1980) (formal denial of tenure). In the absence of a federal rule, "[a]long with the limitations period, the court borrows the state's equitable tolling rules, absent a reason not to do so." *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1135 (9th Cir. 2001), *amended*, 213 F.3d 1186 (9th Cir. 2001); *Brown v. Napa Valley Sch. Dist.*, No. C-11-5673 JCS, 2012 WL 1831539, at *6 (N.D. Cal. May 18, 2012) (citing *Daviton*, 241 F.3d at 1135). In California, when exhaustion of administrative remedies is a prerequisite to a civil action, the limitations period is suspended during the administrative proceedings. *Brown*, 2012 WL 1831539, at *6 (citing *Addison v. State*, 21 Cal. 3d 313, 318 (1978)). "Regardless of whether the exhaustion of one remedy is a prerequisite to the pursuit of

United States District Court
Northern District of California

another, if the defendant is not prejudiced thereby, the running of the limitations period is tolled when an injured person has several legal remedies and, reasonably and in good faith, pursued one." *Id.* (quoting *Addison*, 21 Cal. 3d at 318 (cleaned up)). A claim may be dismissed pursuant to the statute of limitations at the pleadings stage only when "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

In their reply (without conceding tolling), the defendants assert that at least adverse actions two and three (the denial of appointment to committees and the investigations) are time-barred.[34] This argument recognizes that the claim predicated on the half-step deceleration is not time barred at the pleadings stage. That leaves the other two theories of harm. The plaintiff does not advance them as separate theories and instead offers them as context for the adverse employment decision of the half-step deceleration, which allegedly was not a final decision until August 2024.[35]

More specifically, the denial of the committee assignments was in September 2019, with a November 2022 denial of plaintiff's complaint, more than two years before March 7, 2025, the date the complaint was filed. But the plaintiff offers his interactions with Professor Canny not as a standalone claim but instead as evidence of retaliation against him for his work on the graduate committee (or perhaps a continuing violation), resulting in his recommendation of the half-step deceleration of the ordinary one-step promotion. The alleged retaliatory investigation of the plaintiff — initiated in November 2022 (the harm, as opposed to the final exonerating decision) — may be time barred as a standalone claim but similarly is proffered as evidence of the timeline resulting in the half-step deceleration.

As a self-represented litigant, the plaintiff has pleaded facts showing some entitlement to relief. *Hearns*, 413 F.3d at 1040–41. The claim, which is predicated on the half-step deceleration, is not barred by the statute of limitations at the pleadings stage. *Huynh*, 465 F.3d at 997.

---

[34] Reply – ECF No. 47 at 2–4.

[35] Opp'n – ECF No. 46 at 12–13 (making this argument); *see supra* Statement (summarizing the factual predicates for the plaintiff's case).

United States District Court
Northern District of California

**2. Timeliness of Title VII Claims**

Under Title VII, a plaintiff must timely file a discrimination charge with the EEOC or a qualifying state agency. 42 U.S.C. § 2000e-5; *Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1104 (9th Cir. 2018). Here, the plaintiff filed his claim with a state agency on April 5, 2024,[36] predicated on discrimination based on Indian ethnicity and caste and retaliation for filing a complaint about the discrimination.[37] The complaint here must be filed within three-hundred days of the allegedly unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1).[38] Like the argument in the last section, the defendants limit their argument to adverse actions two and three, asserting that the plaintiff cannot seek redress for injuries from the denial of appointment to committees or the investigation against him.[39] The plaintiff counters that the complaint against him was resolved only in June 2023, and the claim implicates the promotion.[40] The half-step promotion claim accrued within the three-hundred-day period and is not barred. The other acts may be evidence of the claim.

**3. Discrimination/Retaliation Claims Against Individuals Under Title VII and FEHA**

The plaintiff does not dispute that the individual defendants are not employers and are not personally liable under Title VII and FEHA. *Rohm v. Homer*, 367 F. Supp. 2d 1278, 1284–85 (N.D. Cal. 2005) (citing *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993); Cal. Gov't Code § 12926(d)).[41] The Title VII and FEHA claims against them are dismissed.

---

[36] *See supra* Statement.

[37] SAC – ECF No. 38 at 35 (¶¶ 100–03).

[38] Mot. – ECF No. 44-1 at 10 (citing this point); Opp'n – ECF No. 46 at 16 (same).

[39] Reply – ECF No. 47 at 5–6.

[40] Opp'n – ECF No. 46 at 17; SAC – ECF No. 38 at 27 (¶ 71(4)).

[41] Opp'n – ECF No. 46 at 18.

**4. Due-Process Claim**

The defendants contend that the plaintiff does not plead deprivation of property or the lack of process.[42] The plaintiff counters that he pleads a pay deprivation, inadequate notice of the reasons for it, and a consequent inadequate opportunity to respond.[43] In reply, the defendants assume the deprivation of a property interest but assert that the failure to promote is discretionary, not disciplinary.[44]

Whether the plaintiff can prove a protected property interest and a constitutionally inadequate process cannot be decided at the pleadings stage. As the defendants recognize in their reply brief, the plaintiff alleges that he repeatedly asked for the factual basis for the staff accusations against him, the October 2024 meeting clarified that the basis was the questions formulated with the ombudsperson, and the deceleration decision was predicated only on his interactions with staff and was disciplinary.[45] That is sufficient under Rule 12(b)(6).

**5. FEHA Harassment Claims**

FEHA prohibits harassment of employees because of their race, color, national origin, and ancestry. Cal. Gov't Code § 12940(j). Harassment "consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management." *Reno v. Baird*, 18 Cal. 4th 640, 646–47 (1998). Hiring and termination decisions, job assignments, and promotions or demotions "do not come within the meaning of harassment." *Id.*; *accord Lewis v. UPS, Inc.*, 252 F. App'x 806, 808 (9th Cir. 2007) (threat of termination is not harassment and instead is a personnel-management action). But "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message" if done in an "unnecessarily demeaning" manner and if "the actions establish a widespread pattern of bias." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 708–09 & n.10 (2009)

---

[42] Mot. – ECF No. 44-1 at 12–16.

[43] Opp'n – ECF No. 46 at 18–23.

[44] Reply – ECF No. 47 at 6–7.

[45] *Id.*; *see supra* Statement.

(examples include shunning during staff meetings, belittling the plaintiff's job, and reprimands in front of coworkers).

To state a claim for harassment, the plaintiff must allege that (1) he is a member of a protected group, (2) he was subjected to harassment for belonging to the group, and (3) the "harassment was so severe that it created a hostile work environment." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) (citing *Aguilar v. Avis Rent a Car Sys., Inc.*, 21 Cal. 4th 121, 129–30 (1999)). The harassment must be a "concerted pattern . . . of a repeated, routine or a generalized nature." *Id.* "Isolated incidents that do not exist in a concerted pattern can also fulfill the 'severe or pervasive' prong, but only if such isolated incidents consist of a physical assault or the threat thereof." *Landucci v. State Farm Ins.*, 65 F. Supp. 3d 694, 703–04 (N.D. Cal. 2014) (cleaned up).

At the pleadings stage, the claim survives. The defendants concede that they "are not factually challenging the severity or pervasiveness of the alleged conduct" and instead ask the court to assess the allegations objectively to determine whether a similarly situated person would perceive them as creating an intolerable working environment "against each individual defendant."[46] On this record and argument, the court cannot evaluate whether the alleged harassment is adequately severe or pervasive, whether they are personnel-management decisions alone, or whether they are actionable harassment. The motion to dismiss is denied without prejudice to addressing the issue at summary judgment.

## CONCLUSION

The claims against the individual defendants for FEHA discrimination and retaliation are dismissed. The motion otherwise is denied.

This resolves ECF No. 44.

**IT IS SO ORDERED.**

Dated: March 26, 2026

LAUREL BEELER
United States Magistrate Judge

[46] Reply – ECF No. 47 at 8.