UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Laurel Beeler, Magistrate Judge

| | |
|---|---|
| RAO,<br><br>Plaintiff,<br><br>vs.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>Defendants. | No. C 25-02385-LB |

San Francisco, California
Thursday, March 26, 2026

TRANSCRIPT OF THE OFFICIAL ELECTRONIC SOUND RECORDING 9:55 - 10:14 = 19 MINUTES

APPEARANCES:

For Plaintiff:

Satish Rao
2421 Oregon Street
Berkeley, California 94705
BY: SATISH RAO, IN PRO PER

For Defendants:

Quarles & Brady LLP
101 West Broadway
Suite 1500
San Diego, California 92101
BY: SANDRA MCDONOUGH, ESQ.

Transcribed by:

Echo Reporting, Inc.
Contracted Court Reporter/
Transcriber
echoreporting@yahoo.com

Thursday, March 26, 2026 9:55 a.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK: Calling Civil Action 25-2385, Rao versus Regents of the University of California, et al.

Starting with Plaintiffs, can you please state your appearances for the record.

MR. RAO: My name is Satish Rao, appearing for the Plaintiff.

THE COURT: All right. Good morning.

MS. MCDONOUGH: And good morning. Sandra McDonough for Defendants.

THE COURT: Okay. So I know we kicked this one. I think once I had tech issues, and maybe we maybe had trouble with my date. Let me just tell you -- so it feels like it's been a minute since I looked at your case, but, just looking at my notes that I came through (sic) -- just give me a second. Sorry.

I did a time line. I went through these very thoroughly, and so I think -- and you can please tell me why you disagree -- the -- going through the time line and the -- you know, the kind of -- the time-barred arguments that you raised, and all the other issues in your motion, the tentative on my part is the only one, which I'm not sure Professor Rao really challenges, but it's been a while, so I

can't remember about the individual Defendants being held personally liable under Title VII and FEHA, and, other than that -- and that would result in the claims against them individually being dismissed.

And then otherwise I think that the case was -- I did a very careful time line, and I don't think that -- and I think that the -- and special limitations arguments are difficult under the best of circumstances. That motion is to dismiss, and I think, under the time line that you -- that Professor Rao advances, that the deceleration issue was final in August 2024, within the two-year statute in the (indiscernible) period, plausibly pleads the denial of harassment, without notice of the factual predicate for it or an opportunity to rebut it.

Maybe, at the end of the day -- and, you know, we've done these -- you know, had these cases with the Regents before. At the end of the day, at summary judgment, there may be an employment that's not actionable, but I think the case goes forward just fine at the motion to dismiss, that that pretty much goes entirely your way, Professor Rao, on the motion to dismiss, with the only issue being the individual claims.

That's what I think, and I think -- I spent -- you're very organized, so thank you. It was work, because of the time line, but I constructed a very careful time line in the

order, because I figured it would be helpful to have everything nailed to an order going forward to define the case, but that's my tentative, based on your motion to dismiss. So feel free to tell me why I'm wrong, and then you can have a comment on the decision to dismiss, the individuals. You can comment back, but, either way -- otherwise, the motion pretty much went your way. Okay.

MS. MCDONOUGH: Thank you, and thank you for taking the time on this. The first issue is the property interest. So there still has not been any pleading of a property interest. That was denied. So he's still employed. I think that his only damage is the half-step --

THE COURT: Well, that's the main thing, I mean, really, just kind of one of the things I wanted to talk with you about, and I don't mean to interrupt you, but I think, yes, I mean, that's what happened, and I think a fair picture of what happened here, and I understand the context. There's a lot that went on during that time period.

We kind of have somebody, a professor, for the record, who is knocking himself out, and when people don't get their half-step promotion, people tend to get annoyed by it, and so that's the crux of the case, right, whether there ultimately is anything that there, as from an actionable claim. Hundred percent agree, just concerned that it can't be dealt with at the pleading stage, but that's what

happened.

And remind me. I have this all in mind, and it's written in my order, but remind me where you are, again, in your evaluation cycle. It's every three years for you, right, not five, three?

MR. RAO: Right.

THE COURT: And where are you in that period now?

MR. RAO: I'm on the next one --

THE COURT: You're on the next --

MR. RAO: -- but these things, as you noticed -- and partially this is why some of the timing issues are -- these processes take forever.

THE COURT: No, I definitely appreciate that.

MR. RAO: You run out of limitations, I think. You know, they're not supposed to take that long, and so I'm on the 2024 -- it's still in process, the 2024 one. That one was the 2021.

THE COURT: Interesting.

MR. RAO: And -- yes. I can address the property. It's a little bit more complicated.

THE COURT: Well, I'm not -- I mostly think that we're going to -- I mean, yes, you're probably correct on what the issues are. I mean, primarily the arguments were statute of limitations, and I'm just -- yes. But I hear you on the property issues. So you said the piece on, you know,

the only issue is the damage for the half-step piece of it. I -- yes. You know, tricky thing here, which I did want to ask you about. We're not in case management stage, but I just don't know if there's any chance of reconciliation through some sort of a mediation process.

MS. MCDONOUGH: We participated in the Court's mediation process.

THE COURT: Okay. You did. Okay. I didn't remember that. And how did that go?

MS. MCDONOUGH: We did not settle.

THE COURT: Do you think a settlement conference might be helpful?

MS. MCDONOUGH: I don't at this point, if the parties are at the same place that they were.

THE COURT: Okay.

MS. MCDONOUGH: Yes.

THE COURT: All right. Anyway -- but go on with your argument.

MS. MCDONOUGH: So, just putting aside the statute of limitations, a property right has to be something that he's entitled to, and the policies that he attached show that he's not entitled to a full staff. He's not entitled to any staff, but, rather, it's something that's at the discretion of the committee.

THE COURT: Okay.

MS. MCDONOUGH: Then, on the -- the other two issues is the due process.

THE COURT: You sort of -- by the time you got to the reply, you basically -- based on Professor Rao's argument, you basically just assumed a property interest in your reply brief, I thought. That's what my notes say. I mean, the -- and so it's a declaration of property in the form of -- I just -- you know, so what's the -- so why -- so tell me again your position on why there's not a constitutionally protected -- the process piece -- I think he alleged a process piece. So just say slowly again, so I can listen to your property argument again, and what your argument is there.

MS. MCDONOUGH: The property argument is that the only way he can bring a deprivation of property is --

THE COURT: Is he's entitled to something.

MS. MCDONOUGH: -- he's entitled to something, and he's not entitled to a merit increase. He's entitled to be considered for one --

THE COURT: Right.

MS. MCDONOUGH: -- but he's not entitled to have one.

THE COURT: Okay. I see.

MS. MCDONOUGH: I mean, under his argument -- and we did not concede that there was a property interest.

THE COURT: No, I know you didn't, but you -- I know you didn't concede it. That's for sure. But you just -- in the reply brief, you more or less just -- the main focus of the argument was the -- you know, he -- and, again, I mean, I went through the time line, and all the papers, and all of your allegations, pretty thoroughly, and they repeatedly -- I watched the video. I even watched the video. It's totally okay. It's totally okay.

MR. RAO: I'm really sorry about that.

THE COURT: It's okay. That's my job, to watch the video, but I even watched the video, and we repeatedly asked for a predicate, and then, again, I'm -- your -- and on -- at one of the appeals stage, it actually bent a little bit more favorably your way, in that the first letter from the first level of review was a little like, "You're not publishing quite enough," and the second review said, "No. You know, he's doing fine," and there's only this one piece of it. So, all right. I understand the argument. You're saying it's just a process argument. He's entitled to the process to be considered for it, but not to the actual -- so I understand.

MS. MCDONOUGH: Right. And then the due process portion of it is, you know, he argues that the matter should be equitably tolled because he's been in this due process period for a few years, and so, then, on the other side of

the coin, he says he didn't receive due process. So it can't be both. He can't say, "I've been under all of these appeals processes," and getting to go, you know, to the next level, and then say, "But I got no due process."

THE COURT: Okay. No, I understand the argument. I just think it's very hard to deal with tolling issues. I mean, I put down a very clean time line in the order, and the issue really is -- it's not even just tolling. It's like when the decision is final. I mean, that's when the statute of limitations -- and how is it any earlier than that August time period? Why isn't that -- you know, and that's -- I mean, and you have an argument that it stretches some months after that, but you don't even need it to get to the -- its timely piece of it.

MS. MCDONOUGH: I don't agree with the statute of limitations, but I'm not argue that at all today.

THE COURT: Okay. All right.

MS. MCDONOUGH: I'm arguing property, and then he talks about all the process that he had.

THE COURT: Right.

MS. MCDONOUGH: So there is no way to maintain a failure to provide due process when he's alleged and conceded that he's had three years of process.

THE COURT: Okay. Good. Thanks. All right.

So I'm mostly -- it's -- I'm going to let it --

MR. RAO: May I respond?

THE COURT: Yes, you may, but I'm just going to let you know I'm going to go your way on everything, because I'm just not going to do it at the pleadings stage. The only thing that is the individual claims against the individuals for the FEHA, et cetera, and that's it, but I don't -- I can't even remember whether you seriously disputed that, because that's just the law. But, other than that, it's a win for you.

MR. RAO: Yay.

THE COURT: Okay. Yes.

MR. RAO: May I respond --

THE COURT: Yes, you can, but you --

MR. RAO: -- to this? So, just to give you a context first --

THE COURT: Okay. That's fine. That's fine.

MR. RAO: -- I have a chart which also has a time line, which may be helpful for you.

THE COURT: Okay. Yes, you did a good job in your papers with the time line.

MR. RAO: But I think -- a friend of mine said, "Your time line sucks." So I gave him a chart.

THE COURT: Okay.

MR. RAO: If I may --

THE COURT: Okay.

MR. RAO: If I may?

THE COURT: Okay. Sure.

MR. RAO: And I already provided it by e-mail to the (indiscernible).

THE COURT: Sure. I'm not going to turn down the time line for my file. That sounds fine.

MR. RAO: And, also, it has some random rantings, and I apologize for that.

THE COURT: No, it's okay.

MR. RAO: Okay. So, regarding the thing -- opposing counsel is trying to limit it to due process. In fact, the university had a trifecta. They did First Amendment chilling, due process violations with property interests, and discrimination and retaliation. So all those causes are Section 1983 causes, I believe.

And, second of all, in terms of due process, an element of due process, I believe, is being informed of the charges, and throughout that three-year process, until that meeting which you watched -- and I apologize for that.

THE COURT: No, no, no.

MR. RAO: All my --

THE COURT: Sometimes I don't, because I --

MR. RAO: All my friends said it, "You're annoying is another thing," and I'm sorry for that.

THE COURT: Well, I would just --

MR. RAO: And --

THE COURT: I would just say this. I mean, I did take the time, because I thought it was worth getting a clean order and a clean time line to help us all going forward. Technically -- and I did this in a different case -- the incorporation by reference doctrine only goes so far --

MR. RAO: Right.

THE COURT: -- if it doesn't live in the complaint, because, you know, when I got to that second time line, I thought, "Oh." You put together a very meticulous (sic), so I thought I might as well understand the case.

MR. RAO: Right.

THE COURT: So it's fine.

MR. RAO: And, also, for the property interest, it's more complicated than that, because what they did is they misused the promotion process to punish me. Explicitly, in their own documents, they're saying -- they say that the promotion process is not supposed to be used to punish you. There are processes for punishing you, and, in fact, the guidelines for bullying there were not actually policy, but it does explicitly say that promotion processes are not supposed to be used for punishment, and that is what they did.

And, moreover, since that period -- at that period,

there's no bullying guidelines in place, but, if it's -- for context, there are now bullying guidelines in place at the UC level, and those explicitly have a separate process. What they did is they used promotion as an excuse to punish me. All the documents say I met the normal requirements for promotion. In that sense, it was earned.

And, also, there's a notion -- normally, in our university, there's also the practice. If you don't get a promotion, you're off the step. You are actually punished, and you lose good standing pay for that. So not only do I lose my half-step, I also lose -- I've lost at least $14,000 of extra pay that people who are not in the dunce's seat got, like I got, and every document basically acknowledges I did what I needed to. Like, okay, my research was weak, but I taught twice as much.

THE COURT: Well, they even rolled that back at the next level.

MR. RAO: Right.

THE COURT: They just said your research is complicated, and it takes time, and you're carrying whatever, an enormous course load, and they even rolled that piece of it back. It really just came back to this --

MR. RAO: To the punishment.

THE COURT: -- to the bullying piece of --

MR. RAO: And that is not supposed to be in the

promotion process.

THE COURT: Okay. So here's -- so that's fine, helpful. It's helpful context, and I think that I've got enough to take the matter under submission. I have other matters (indiscernible) to the calendar.

One thing to think about, because, you know, we do a lot -- I do a lot of these cases. I have my own trial docket. This isn't a terribly busy day. I do a lot of settlement conferences, too, and you see a lot. Probably, at this point, I've done well over 1,500 cases on the merits, 1,500 by way of settlement conference, so I've seen a lot.

It is highly unusual for someone to be in litigation, when they're currently employed, with their employer, and so -- and I definitely -- and I don't think you'll be disappointed in the order. I think it does a reasonable job capturing all that you put in at the pleading stage. So I think it's a good path going forward. One of my colleagues went back -- some years ago, she went back five years and looked at all the different cases, and it just -- it's unusual. We live in unusual times. I mean, you're in the field which is -- you know, you've got a front seat to all of it, and who knows what the next year is going to look like, from a litigation perspective?

One of the things that happened in the pandemic is we

had the same -- jury pools are changing now, but, you know, the boomers are gone, and Gen X is almost gone. But one of the things we saw in the pandemic, we saw the same jurors we always had, but they were unemployed. That was something different in the pandemic. Now we're entering kind of a funny year, and it is unusual to be in litigation against your employer. I'm just letting you know that.

So I know that you didn't have a productive mediation. I will be seeing you back shortly for a case management conference. I don't know when it is, because it's -- I worked on my calendar, and I mostly set a case schedule. You should think about whether -- I mean, I would encourage you -- and I understand that lawsuits against the Regents can be -- they have a process, because it involves an institution, AKA bureaucracy. So I understand that.

Something to think about is how much stomach you have for your litigation in a world that's uncertain, and where, you know, some might say it's not great. I mean, I understand how hard you work. I understood that from the papers, and how much you devote to your job and to your vocation, and so it is not a great situation that you find yourself in, to have that half-step promotion and the resulting loss of, you know, not just recognition, but also some salary attached to it.

It's not -- doesn't -- it must not feel very good,

being the kind of performer that you are, but sometimes it's good to think about, you know, is there something that you could do to move forward in a way that's productive and -- but we'll talk about that at the case management conference.

So I will take the matter under submission, and I will issue an order shortly. Appreciate your coming in for the argument.

MR. RAO: Yes. May I say, I really do want to settle, and I do hear you. I'm like, "You're still employed? Why the hell are you (indiscernible) in federal court?"

THE COURT: Well, and we're living in a time where people are not going to be so lucky as you, right --

MR. RAO: Right, right.

THE COURT: -- even though it doesn't feel very lucky when you're on the short end of your decision.

MR. RAO: I do understand that --

THE COURT: Yes.

MR. RAO: -- and I tried every possible avenue inside.

THE COURT: I know you did.

MR. RAO: I did not want to go public, and I'm still trying things inside, and, in fact, I think the current things, if the Court is not there, they will not pay attention to me. So I think there's a lot of things

happening.

THE COURT: And you'll have a very tidy order that kinds of lays out the time line.

MR. RAO: And I'm happy to do another settlement --

THE COURT: Well, I'm not going to push it.

MR. RAO: -- and, also, early neutral evaluation. I'm very interested in that.

THE COURT: Okay. That might be something to think about. Again, you might be --

MR. RAO: And a third thing, but --

THE COURT: Okay.

MR. RAO: And I apologize for the incompetence of my filings, and I thank you for your patience.

THE COURT: You did a very good job. It was a lot, but you did a very good job, so it's fine. All right. Thanks.

Yes.

MS. MCDONOUGH: We just -- we haven't done initial disclosures or anything, and so will your scheduling order lay out --

THE COURT: Well, so we didn't -- this is -- is this supposed to be a CMC as well? I don't think so.

MS. MCDONOUGH: No.

THE COURT: Usually -- when is our CMC, Elaine,

our initial CMC?

MS. MCDONOUGH: At least I don't think it was.

THE CLERK: May 14.

THE COURT: May 14. Okay. And we can do that by Zoom. It's not in person. Usually I do CMCs, and that's when you'll talk, set a schedule.

Yes.

MR. RAO: I have a question about the discovery, since I have to apparently learn about that, too.

THE COURT: You've got the handbook for litigants representing themselves?

MR. RAO: Yes. I will meet --

THE COURT: It's helpful on discovery.

MR. RAO: Yes. So it's an April 27 --

THE COURT: And then I'll recommend --

MR. RAO: Yes.

THE COURT: I'll recommend one more thing to you, the Rutter Guide.

MR. RAO: Okay. Yes. You said -- I did, yes.

THE COURT: Did I say that the last time? Yes. Okay.

MR. RAO: I will -- I bought it.

THE COURT: Did you really? My goodness. I would have given you my old copy, actually.

MR. RAO: Okay. So the April 27th discovery date

seems too soon, because, you know, it's a --

THE COURT: You guys, here's the thing. You should get together, talk it out, work out what seems reasonable. If you can't reach an agreement, we'll talk about it in May.

MR. RAO: In May.

THE COURT: Yes.

MR. RAO: So the April 27th deadline is not a deadline?

THE COURT: There's -- yes. There's just kind of a meet-and-confer process. It's called a Rule 26 conference. You get together. You talk ut things. You're able to be flexible. You usually should work out things that work out for both of you, and don't worry about it if there are any disagreements. We'll just deal with them in May.

MR. RAO: Okay. Thank you.

THE COURT: Okay. All right. Okay.

MS. MCDONOUGH: Thank you, your Honor. Good talk.

MR. RAO: Thank you, your Honor.

THE COURT: Of course.

(Proceedings adjourned at 10:14 a.m.)

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.



Echo Reporting, Inc., Transcriber

Wednesday, April 29, 2026