SANDRA L. McDONOUGH (SBN 193308)
Sandy.McDonough@quarles.com
JACK T. EDMOND (SBN 363497)
jack.edmond@quarles.com
**QUARLES & BRADY LLP**
101 West Broadway, Suite 1500
San Diego, California 92101
Telephone: 619-237-5200
Facsimile: 619-615-0700

Attorneys for THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; PROFESSOR JOHN CANNY; DEAN TSU-JAE KING LIU; DEAN JENNIFER CHAYES; VICE PROVOST VICTORIA PLAUT; VICE PROVOST JANET BROUGHTON

SATISH RAO
2421 Oregon St.
Berkeley, CA 94705
510-882-5324
In Pro Per

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| SATISH RAO,<br><br>Plaintiff,<br><br>v.<br><br>PROFESSOR JOHN CANNY; DEAN TSU-JAE KING LIU; DEAN JENNIFER CHAYES; VICE PROVOST VICTORIA PLAUT; VICE PROVOST JANET BROUGHTON; in their individual and official capacities; REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendants. | Case No. 3:25-cv-02385-LB<br><br>**JOINT DISCOVERY LETTER (Standing Order § 2.2)** |

The parties submit this joint letter under Section 2.2 of the Court's Standing Order. Defendants' lead counsel and Plaintiff (pro se) met and conferred by videoconference on August 27, 2026 and were unable to resolve the dispute described below.

**1. The Unresolved Issue**

Whether Plaintiff's first set of Requests for Admission (RFAs) should be capped or reduced in number from the current total of 811. Defendants propose that Plaintiff withdraw the set and reissue no more than 100 narrowly tailored RFAs as a starting point; Plaintiff declines.

**2. Background**

On July 24, 2026, Plaintiff served his first sets of written discovery on Defendants, which included a total of 811 Requests for Admission. Plaintiff also served a Source Index identifying, for each document-anchored Request, the source document. Defendants subsequently notified Plaintiff of their objections to the RFAs for the reasons described herein. Plaintiff has offered to confer on the source of, or any confusion regarding, any particular Request, and the Parties met and conferred on August 27, 2026, in an effort to informally resolve the dispute. They were unable to reach agreement.

**3. Defendants' Position**

Plaintiff served approximately **811 RFAs** across six Defendants in a single-plaintiff employment case. Rule 36 has no numerical cap, but Rule 26(b)(1)'s proportionality requirement and Rule 26(c)'s protection against undue burden still apply, and Plaintiff's reasoning that 'Defendants will need to look at it eventually' is not a justification for unduly burdensome discovery. At this scale, requiring separate responses to hundreds of requests that verify document language, repeat the same propositions, or do not narrow a triable issue imposes a burden out of proportion to whatever incremental value there may be to Plaintiff. Defendants do not contend that the disputed RFAs are categorically improper. Rather, Defendants' request a targeted set that fulfills the purpose of Rule 36.

First, to illustrate the burden imposed, even assuming Defendants could respond to each request in only five minutes, preparing responses would require nearly 68 hours. That estimate is conservative because it does not account for the time required to investigate the requests, identify and review relevant documents, formulate appropriate objections, draft substantive responses, or meetings between client and counsel to review and finalize those responses. In total, Defendants would be required to devote at least eight and a half full workdays to this discovery alone. Even with a complex factual record, the burden imposed is disproportionate to the needs of the case.

/ / /

/ / /

/ / /

/ / /

/ / /

Second, nearly 500 of the RFAs simply ask whether quoted text appears in certain documents. The fact that Plaintiff has already identified the documents referenced is immaterial to the burden imposed. For example, certain requests ask Defendants to admit that a decision letter says "it was not appropriate for Plaintiff 'to continue leveling charges and making personal attacks . . .'"; and that the Bullying Guidelines state that "the merit and promotion process is not intended nor should it be used to discipline behavior." See Regents RFAs 83, 93. These requests are not categorically improper, but where the documents are identified and authenticity is not genuinely disputed, hundreds of line-by-line confirmations add little to Rule 36's narrowing purpose. Defendants offered on several occasions to review a list of relevant documents and stipulate to authenticity rather than scour through each document to identify whether the purported quoted language exists, but Plaintiff declined.

Third, materially identical requests repeatedly ask multiple Defendants to admit the same thing—for example, that Defendant Canny's questionnaire "recount[s] no specific date, location, or specific incident." See Regents RFA 24, Chayes RFA 29, Liu RFA 49, Broughton RFA 24. Separate Defendants may have separate positions, and no admission by one party is asserted to bind another. Defendants' objection is that Plaintiff appears to be multiplying the same proposition across sets rather than directing it to the specific entity or individual with unique knowledge. Rules 26(b)(1) and 26(c) favor consolidation.

Fourth, issues remain even after eliminating Plaintiff's superfluous quote-identification and otherwise duplicative requests. Plaintiff's remaining inquiries are simply better suited for deposition—not written discovery. For example, certain requests probe recollection and interpretation of a specific October 11 meeting, including whether a certain participant said "I know I heard her say it." See Regents RFA 184 and Chayes RFA 53. The requests seek context, attribution, and meaning, which are better tested through targeted depositions of the relevant participants than through serial Rule 36 admissions. Defendants have indicated to Plaintiff that the information sought should be solicited at deposition, but Plaintiff continues to decline that invitation. Rules 26(b)(1) and 26(c), together with Rule 36's narrowing purpose, support using the more focused and less burdensome discovery device.

Lastly, several requests are plainly immaterial. For example, Plaintiff seeks admission regarding biographical information, like "[a]dmit that [y]ou co-founded Microsoft Research New England and the Theory Group at Microsoft Research . . . ." See Chayes RFA 77. Such credentials do not materially narrow the case-specific factual issues and, again, should be elicited at deposition. Their marginal value is low and illustrates that not all RFAs effectively fulfill the purpose of Rule 36.

To be clear, Defendants have no intention of obstructing the discovery process. Defendants have already prepared written responses to 95 Requests for Production and 25 interrogatories. When combined in number with the RFAs, Plaintiff has propounded 931 requests and/or interrogatories (and still has the opportunity to propound more interrogatories). Defendants' request is for a targeted set of RFAs that fulfills the purpose of Rule 36. Attached as **Exhibit B** is a true and correct copy of the RFAs propounded upon Defendant Chayes, which Defendants attach here as a sample. These RFAs constitute just 77 of 811 total RFAs.

/ / /

**4. Plaintiff's Position**

Plaintiff's Requests for Admission are designed to narrow this document-heavy case. They are largely **record-anchored**: they ask each Defendant to admit or deny discrete facts — many drawn verbatim from the University's own documents and, where applicable, identified in a courtesy Source Index — grouped by answering Defendant. Rule 36 imposes **no presumptive numerical limit** (in contrast to Rule 33's twenty-five — itself reset party-to-party here); Defendants therefore must show why *these particular* Requests warrant limitation, and any Request a Defendant contends improper can be met by a targeted objection (Rule 36(a)(4)–(5)). On a request to limit discovery, the burden is **Defendants'** to show particularized good cause under Rule 26(c); "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

**The Requests serve Rule 36's central function — substituting an admission for proof.** An admission conclusively establishes a matter (Rule 36(b)) so it need not be proved at trial — Rule 36's stated object. The Requests are largely record-anchored to convert otherwise-necessary documentary proof into facts established before trial, and a denial identifies what remains contested and against which Defendant. Proportionality confirms the point: the issues are important, the parties' access and resources favor Plaintiff, and only burden even arguably favors Defendants.

**As to burden, Defendants' own conduct shows it is modest.** Answering "admit" or "deny" as to facts in Defendants' own documents — which they must review for their Rule 34 production regardless — is a modest, one-time task. The parties agreed party-to-party to roughly one hundred fifty interrogatories, which demand narrative, verified answers (Rule 33) unlike a Request's "admit" or "deny"; a party that accepted the more burdensome device in that volume cannot credibly call these excessive.

**Defendants' specific examples, at most, identify particular Requests to discuss — not grounds to erase 711.** Authentication establishes a document's genuineness but not the factual propositions the Requests address. Plaintiff's Requests isolate discrete propositions in the decisional record bearing on the stated reasons for the challenged actions — for example, that a decision letter charged Plaintiff with "leveling charges and making personal attacks" (offered without specifics), and that the Bullying Guidelines state the "merit and promotion process is not intended nor should it be used to discipline behavior." Directing such a Request to the Defendant whose own act, knowledge, or reliance it concerns fixes that Defendant's relationship to the record, which authentication does not establish — not several Defendants confirming one authenticated passage. Any contention that particular Requests are duplicative, of marginal value, or better suited to deposition is request-specific — their document-quote, October-11, and biographical examples, which Plaintiff has offered to address individually — not a basis for reducing 811 to 100.

**The courtesy citations reduce burden, not add it.** Plaintiff's Source Index and Advisory "RFAs Cited" copy give a page-level citation for each verified quotation — the document, the page, and the verbatim quote — so confirmation is a check at a cited page, not a search. The Index is not "immaterial"; reducing Defendants' burden was its purpose.

**5. Proposed Compromises**

<u>**Defendants**</u>: Plaintiff withdraws the current set and reissues no more than 100 RFAs across all Defendants, after eliminating document-quote requests and consolidating duplicate propositions to be geared toward the individual or entity with unique knowledge, without prejudice to Plaintiff's ability to later propound additional RFAs upon a particularized showing. Plaintiff should compile a list of documents for which he seeks authentication from Defendants. Plaintiff should also notice depositions for the individual Defendants to more efficiently develop the factual record. Given the complexity and volume of the factual record, Defendants further request that any compelled responses be due, at minimum, 45 days after the Court's order, unless the Court sets another deadline.

<u>**Plaintiff**</u>: Plaintiff declines an arbitrary numerical cap and does not agree to withdraw and reissue the set. Plaintiff offers, in good faith, to (1) **meet and confer on any specific Requests Defendants identify by number** as duplicative, compound, or ambiguous, and withdraw, consolidate, or clarify those; and (2) **address any timing concern through additional time, not a cap** — the parties have already extended Defendants' RFA response deadlines (ECF 72), and any further schedule is for the Court to set.

Exhibit A conservatively identifies the 83 Requests directed to the Regents that are most susceptible to Defendants' contention that they merely verify language or propositions reflected in identified documents. Even these serve Rule 36's proof-simplifying function: an admission is conclusively binding (Rule 36(b)) so that the requesting party may avoid the expense of proving the admitted matter (Fed. R. Civ. P. 36 advisory committee's note (1970)); it establishes the proposition — usable within the stipulated-facts record and in argument — without separately presenting the source document and proving the passage. Such an admission establishes what the record says, not that the proposition is true or that any Defendant adopted it.

The Requests directed to the individual Defendants stand differently: each establishes a predicate for examining that Defendant at deposition or trial — what he or she wrote, reviewed, knew, agreed with, or relied upon — a function no authentication of a document serves. That is especially so for Vice Provost Plaut, the final institutional decisionmaker, whose Notice of Decision states that she "carefully reviewed" Plaintiff's submissions and the investigation reports; an admission that a report states a given fact establishes a predicate for examining her understanding of, and action on, that fact.

If the Court finds persuasive Defendants' contention that passage-level admissions directed to the Regents are cumulative once the source documents are authenticated, relief can be confined to the specifically identified Regents Requests (Exhibit A), with a stipulation to the genuineness of the corresponding source documents, rather than an arbitrary numerical cap on the remaining Requests. Plaintiff remains willing to confer over whether any particular Request belongs in that subset.

Plaintiff thus objects to an arbitrary numerical cap, not to reasonable response time. The Court should leave the remaining Requests intact and may set whatever response schedule it deems appropriate.

**Attestation (§ 2.2)**: Defendants' lead counsel and Plaintiff (pro se) met and conferred by videoconference on August 27, 2026 and attest to the same.

Respectfully submitted,

Dated: September 10, 2026

QUARLES & BRADY LLP

By: */s/ Sandra L McDonough*

SANDRA L. McDONOUGH
Attorneys for THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; PROFESSOR JOHN CANNY; DEAN TSU-JAE KING LIU; DEAN JENNIFER CHAYES; VICE PROVOST VICTORIA PLAUT; VICE PROVOST JANET BROUGHTON

Dated: September 10, 2026

By: */s/ Satish Rao*

SATISH RAO
Plaintiff in Pro Per

**LOCAL RULE 5-1(i)(3) ATTESTATION**

The foregoing joint stipulation requires the signature of both parties. Prior to filing, I obtained Plaintiff's concurrence in the filing of this joint stipulation, wherein Plaintiff authorized me to apply his digital signature on his behalf. Thus, this concurrence serves in lieu of Plaintiff applying his own signature pursuant to Local Rule 5-1(i)(3). I will maintain records supporting Plaintiff's concurrence for subsequent production to the Court, if so ordered, or for inspection upon request by a party, until one year after the final resolution of this action, including any appeal.

*/s/ Sandra L McDonough*

SANDRA L. McDONOUGH

# EXHIBIT A

**EXHIBIT A**

**Rao v. Regents of the University of California, No. 3:25-cv-02385-LB (N.D. Cal.)**

**Plaintiff's Identification of Requests for Admission (to The Regents) Most Susceptible to Defendants' Document-Verification Contention**

For purposes of the parties' Standing Order § 2.2 joint letter, Plaintiff identifies the following 83 Requests for Admission directed to The Regents (served July 24, 2026) as those most susceptible to Defendants' contention that they do no more than verify language or propositions reflected in identified documents. The Requests are identified by number; their full text is in the served set. Listing a Request here does not withdraw it.

**Regents Requests for Admission Nos.:** 2, 3, 7, 45, 47, 48, 49, 50, 51, 53, 55, 56, 57, 58, 59, 60, 61, 62, 66, 67, 68, 69, 80, 83, 85, 86, 87, 91, 92, 93, 94, 100, 101, 102, 103, 104, 106, 107, 110, 115, 118, 119, 125, 134, 142, 143, 144, 145, 146, 149, 151, 162, 163, 169, 171, 172, 174, 175, 201, 205, 207, 209, 225, 226, 232, 233, 245, 249, 251, 255, 263, 266, 267, 270, 274, 277, 280, 281, 282, 283, 286, 320, 321.

*For convenience, a short descriptor of each:*

| No. | Descriptor |
|---|---|
| 2 | the 2021 TOP Program document states, as an eligibility criterion,... |
| 3 | the 2022 Salary Program document states the same eligibility... |
| 7 | the final reconsideration decision in Plaintiff's merit case, dated... |
| 45 | the OPHD report in Case No. 2021-UCB-00381 states that Plaintiff "is... |
| 47 | the OPHD report in Case No. 2021-UCB-00381 states that Plaintiff's... |
| 48 | the OPHD report in Case No. 2021-UCB-00381 states that Canny "agreed... |
| 49 | the OPHD report in Case No. 2021-UCB-00381 states that "the caste... |
| 50 | the OPHD report in Case No. 2021-UCB-00381 states that the reasons... |
| 51 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 53 | the OPHD Report of Investigation concerning Heather Levien (Case No.... |
| 55 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |

| | |
|---|---|
| 56 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 57 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 58 | the OPHD Report of Investigation concerning Heather Levien (Case No.... |
| 59 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 60 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 61 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 62 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 66 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 67 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 68 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 69 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 80 | the March 18, 2025 email from Dean Chayes (cc Dean Liu) states:... |
| 83 | the Bullying Guidelines state: “the merit and promotion process is... |
| 85 | the Bullying Guidelines provide that behavior which can be considered... |
| 86 | the Bullying Guidelines provide that, where bullying or demeaning... |
| 87 | the Bullying Guidelines provide that assessments of poor performance... |
| 91 | the May 28, 2024 reconsideration letter of the Budget Committee (the... |
| 92 | the BIR Reconsideration Letter states that Plaintiff “argues that his... |
| 93 | the June 23, 2022 letter of the Budget Committee (the “BIR Letter”)... |

| | |
|---|---|
| 94 | the BIR Letter states: “The place for such discourse is in open... |
| 100 | the Response to the Departmental Recommendation states: “There are no... |
| 101 | the Response to the Departmental Recommendation states that the... |
| 102 | the Response to the Departmental Recommendation states that “efforts... |
| 103 | the Response to the Departmental Recommendation states that a... |
| 104 | the Response to the Departmental Recommendation states that “the... |
| 106 | the BIR Letter states that, in their assessment, “the Associate... |
| 107 | the BIR Letter states that the reviewers “received a complex set of... |
| 110 | the merit Recommendation signed by Deans Chayes and Liu states:... |
| 115 | Plaintiff’s written appeal materials expressly stated that Defendant... |
| 118 | Plaintiff’s affidavit concerning his February 13, 2019 meeting with... |
| 119 | Plaintiff’s affidavit concerning his May 16, 2019 meeting with Chairs... |
| 125 | the October 26, 2023 reconsideration recommendation signed by... |
| 134 | Plaintiff’s response to the departmental recommendation states: “Rao... |
| 142 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 143 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 144 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 145 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 146 | the Notice of Allegations in OPHD Case No. 2021-UCB-00381 alleged... |

| | |
|---|---|
| 149 | the OPHD Report of Investigation concerning Heather Levien (Case No.... |
| 151 | Plaintiff's affidavit concerning his May 16, 2019 meeting with Chairs... |
| 162 | APM-015 (the Faculty Code of Conduct) §II.D.1 identifies as... |
| 163 | APM-015 §II.D.2 identifies as unacceptable faculty conduct... |
| 169 | APM-015 (the Faculty Code of Conduct) §II.D.5 identifies as... |
| 171 | APM-010 (Academic Freedom) states: "The principles of academic... |
| 172 | APM-010 (Academic Freedom) states: "Members of the faculty are... |
| 174 | the June 11, 2026 Prima Facie Findings Letter of the Committee on... |
| 175 | APM-035 (Affirmative Action and Nondiscrimination in Employment)... |
| 201 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 205 | the Report of Investigation in OPHD Case No. 2021-UCB-00381 states... |
| 207 | the April 29, 2022 Notice of Allegations in OPHD Case No.... |
| 209 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 225 | APM-035 provides: "University policy also prohibits retaliation... |
| 226 | APM-035 provides: "Retaliation includes threats, intimidation,... |
| 232 | the departmental recommendation states, "Rao did make positive... |
| 233 | the departmental recommendation states, "I do acknowledge that most... |
| 245 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381... |
| 249 | the OPHD Report of Investigation concerning Respondent Levien in OPHD... |

| | |
|---|---|
| 251 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381… |
| 255 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381… |
| 263 | the OPHD Report of Investigation concerning Respondent Canny in OPHD… |
| 266 | the OPHD Report of Investigation concerning Respondent Canny in OPHD… |
| 267 | the OPHD Report of Investigation concerning Respondent Levien in OPHD… |
| 270 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381… |
| 274 | the OPHD Report of Investigation concerning Respondent Canny in OPHD… |
| 277 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381… |
| 280 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381… |
| 281 | the OPHD Report of Investigation in OPHD Case No. 2021-UCB-00381… |
| 282 | the OPHD Report of Investigation concerning Respondent Levien in OPHD… |
| 283 | the University's "Faculty Salary Equity Study, Update, 2023" (Office… |
| 286 | the OPHD Report of Investigation concerning Respondent Canny in OPHD… |
| 320 | the Bullying Guidelines provide that assessments of poor performance… |
| 321 | the Bullying Guidelines (Section 8.3, "Discipline") provide that… |

# EXHIBIT B

## SET DIRECTED TO DEFENDANT JENNIFER CHAYES

## REQUESTS FOR ADMISSION TO DEFENDANT JENNIFER CHAYES

1. **Request for Admission No. 1.** Admit that You authored or co-authored three or more letters or memoranda concerning Plaintiff's merit review, deceleration, or reconsideration.

2. **Request for Admission No. 2.** Admit that You participated in the recorded October 11, 2024 Zoom meeting with Plaintiff and Defendant Liu.

3. **Request for Admission No. 3.** Admit that the March 18, 2025 email stated that the merit-review decision on Plaintiff's case was final.

4. **Request for Admission No. 4.** Admit that the March 18, 2025 email stated that the University could not revisit the decision.

5. **Request for Admission No. 5.** Admit that the March 18, 2025 email directed Plaintiff to the Privilege and Tenure process if he wished to pursue the matter further.

6. **Request for Admission No. 6.** Admit that the conclusion stated in the March 18, 2025 email was based in part on Associate Vice Provost Julianna Deardorff's review of the recording of the October 11, 2024 meeting.

7. **Request for Admission No. 7.** Admit that the deceleration imposed on Plaintiff was based on the asserted effect of Plaintiff's conduct on staff, rather than on any deficiency in Plaintiff's research or teaching.

8. **Request for Admission No. 8.** Admit that during the October 11, 2024 meeting You did not identify any specific interaction between Plaintiff and a staff member that was witnessed by a staff member.

9. **Request for Admission No. 9.** Admit that You did not personally witness any interaction between Plaintiff and any member of staff that You contend supported the deceleration.

10. **Request for Admission No. 10.** Admit that during the October 11, 2024 meeting You discussed the possibility of a professional facilitator or coaching to resolve Plaintiff's matter.

11. **Request for Admission No. 11.** Admit that during the October 11, 2024 meeting Plaintiff stated that he wanted “a truth and reconciliation” process.

12. **Request for Admission No. 12.** Admit that no proposal for facilitation, coaching, or a truth-and-reconciliation process discussed during the October 11, 2024 meeting was implemented before the March 18, 2025 email.

13. **Request for Admission No. 13.** Admit that between the October 11, 2024 meeting and the March 18, 2025 email, no new factual investigation of the specific staff interactions underlying the deceleration was conducted.

14. **Request for Admission No. 14.** Admit that You co-authored the March 18, 2025 email with Defendant Liu.

15. **Request for Admission No. 15.** Admit that You signed the January 30, 2022 recommendation concerning Plaintiff’s merit review, together with Dean Tsu-Jae King Liu (the “January 30, 2022 Recommendation”).

16. **Request for Admission No. 16.** Admit that the January 30, 2022 Recommendation states: “the case materials do demonstrate that his actions created a hostile work environment.”

17. **Request for Admission No. 17.** Admit that the January 30, 2022 Recommendation states that Plaintiff’s asserted creation of a hostile work environment was “in accordance with [the] August 1, 2019 Guidelines for Preventing and Responding to Faculty Bullying and Other Demeaning and Disruptive Behavior.”

18. **Request for Admission No. 18.** Admit that the January 30, 2022 Recommendation states that Plaintiff’s asserted creation of a hostile work environment “should have bearing on how we assess our faculty’s performance during any given review period.”

19. **Request for Admission No. 19.** Admit that no formal investigation concerning whether Plaintiff created a hostile work environment was conducted before You signed the January 30, 2022 Recommendation.

20. **Request for Admission No. 20.** Admit that You signed the August 5, 2022 letter concerning Plaintiff's merit review, together with Dean Tsu-Jae King Liu (the "August 5, 2022 letter").

21. **Request for Admission No. 21.** Admit that the August 5, 2022 letter states that it was not appropriate for Plaintiff "to continue leveling charges against, and making personal attacks upon, various members of the academic administration stemming from professional disagreements with departmental policies and decisions."

22. **Request for Admission No. 22.** Admit that the August 5, 2022 letter identifies no specific charge, statement, incident, or date constituting the "leveling charges against, and making personal attacks upon, various members of the academic administration" it describes.

23. **Request for Admission No. 23.** Admit that the August 5, 2022 letter states: "The place for such discourse is in open forums, of which there are plenty, and this discourse should reflect the same civility that Rao asks of others."

24. **Request for Admission No. 24.** Admit that the October 26, 2023 reconsideration recommendation You signed concerning Plaintiff does not state that Plaintiff engaged in "leveling charges" or "personal attacks" upon members of the academic administration.

25. **Request for Admission No. 25.** Admit that the January 30, 2022 Recommendation states: "The overabundance of email from Rao, included in his 484-page response to the department recommendation, convey a pervasive lack of collegiality toward his faculty and staff colleagues in the department."

26. **Request for Admission No. 26.** Admit that You identified no specific incident of the asserted "pervasive lack of collegiality" in the documents in Plaintiff's promotion file or in the October 11, 2024 recorded meeting.

27. **Request for Admission No. 27.** Admit that the January 30, 2022 Recommendation identifies no specific statement or communication by Plaintiff demonstrating the asserted "pervasive lack of collegiality," apart from the volume of Plaintiff's email correspondence and written submissions.

28. **Request for Admission No. 28.** Admit that the January 30, 2022 Recommendation You signed states: "Specifically, starting on page 298 of [Plaintiff's] response, then-Division Chair Canny provides (in response to a questionnaire submitted to him by [Plaintiff]) substantial details describing how [Plaintiff's] behavior contributed to a disruptive environment that impacted the department climate."

29. **Request for Admission No. 29.** Admit that Defendant Canny's written answers to that questionnaire (Exhibit 10) recount no specific date, location, or specific incident of the alleged conduct.

30. **Request for Admission No. 30.** Admit that, in those answers (Exhibit 10), Defendant Canny described the alleged conduct only in general or characterizing terms (e.g., "verbal intimidation"; "demeaning") and declined to provide specifics, answering "I will not give names of the staff," "Since you are mentioning names of specific staff, I will not answer this," and "I am not going to recount the incident."

31. **Request for Admission No. 31.** Admit that Defendant Canny did not answer the follow-up questionnaire Plaintiff submitted seeking further specifics.

32. **Request for Admission No. 32.** Admit that Plaintiff's written appeal materials expressly stated that Defendant Canny's answers to Plaintiff's questionnaire — characterized in the decision documents as providing "substantial" or "important" details — were non-specific, and quoted Canny's refusals to provide specifics, including "I am not going to recount the incident" and "it was not critical to document each incident in detail."

33. **Request for Admission No. 33.** Admit that the "Guidelines for Preventing and Responding to Faculty Bullying and Other Demeaning & Disruptive Behavior" — which the recommendation You signed invoked as support for the assessment of Plaintiff's service — provide that assessments of poor performance arising from a candidate's bullying or demeaning behavior "should be properly documented … such that the candidate (i) understands the basis for the assessment and (ii) can offer a rebuttal, explanation, or provide context."

34. **Request for Admission No. 34.** Admit that Plaintiff's written reconsideration materials stated that he had never been informed of the specifics of the conduct underlying the

deceleration, and that fundamental fairness requires informing a person subject to punitive action of the specific behavior, with evidence, and permitting a response.

35. **Request for Admission No. 35.** Admit that the materials You reviewed in connection with Plaintiff's merit review included Plaintiff's complaint that EECS staff had made false allegations of racial bias against him.

36. **Request for Admission No. 36.** Admit that the materials You reviewed in connection with Plaintiff's merit review included Plaintiff's contention that Defendant Canny had discriminated against him on the basis of his ethnicity.

37. **Request for Admission No. 37.** Admit that during the October 11, 2024 meeting, after Plaintiff characterized Defendant Liu as having stated that the staff's fear of Plaintiff's legal action was a basis for the deceleration, You responded, "I heard her say it," and then stated that You did not think that was what Defendant Liu meant.

38. **Request for Admission No. 38.** Admit that, in Your February 26, 2025 reply to Plaintiff's February 26, 2025 email, You wrote "We acknowledge the receipt of your email" and did not state that any part of Plaintiff's summary of the October 11, 2024 meeting was inaccurate.

39. **Request for Admission No. 39.** Admit that the January 30, 2022 Recommendation states that Plaintiff's records of research, teaching, and service during the review period were "within the range of a normal merit."

40. **Request for Admission No. 40.** Admit that the January 30, 2022 Recommendation states, "I believe his contributions support a normal one-step merit at this time," and then identifies Plaintiff's asserted creation of a "hostile work environment" as the reason for recommending a half-step instead.

41. **Request for Admission No. 41.** Admit that the August 5, 2022 letter states that Plaintiff had "good records of research and teaching and a strong record of mentoring," and that the only area found not to meet the standard for a normal advance was his record of service.

42. **Request for Admission No. 42.** Admit that the August 5, 2022 letter states that "the documents suggest behavior that reviewers find to be unprofessional on Rao's part."

43. **Request for Admission No. 43.** Admit that, in the August 5, 2022 letter, Plaintiff's criticism of members of the academic administration was identified as conduct bearing on the conclusion that Plaintiff's record of service did not meet the standard for a normal advance.

44. **Request for Admission No. 44.** Admit that, in the August 5, 2022 letter that You signed, You identified Plaintiff's "leveling charges against, and making personal attacks upon, various members of the academic administration stemming from professional disagreements with departmental policies and decisions" as conduct bearing on Plaintiff's record of service.

45. **Request for Admission No. 45.** Admit that the August 5, 2022 letter cited Plaintiff's criticism of members of the academic administration in support of its conclusion that Plaintiff's record of service did not meet the standard for a normal advance.

46. **Request for Admission No. 46.** Admit that in Your March 18, 2025 email to Plaintiff concerning his merit review case, You wrote that Associate Vice Provost for the Faculty Julianna Deardorff, after reviewing the recording of the October 11, 2024 meeting, "confirmed that the procedures dictated by the Academic Personnel Manual (APM) have been followed, and that the merit review decision on [Plaintiff's] case is final."

47. **Request for Admission No. 47.** Admit that in the same March 18, 2025 email, You wrote: "Therefore, we cannot revisit the decision since the university considers the matter to be concluded."

48. **Request for Admission No. 48.** Admit that the March 18, 2025 email to Plaintiff concerning his merit review case was signed "Jennifer and Tsu-Jae."

49. **Request for Admission No. 49.** Admit that during the October 11, 2024 meeting, You stated that, of the three components of review, the service component "was the component that was not just fine."

50. **Request for Admission No. 50.** Admit that during the October 11, 2024 meeting, You stated that a faculty member "on target for all three" components would "get your one step," and one "lacking in one or more … might get half."

51. **Request for Admission No. 51.** Admit that during the October 11, 2024 meeting, You stated that Plaintiff is "an employee of the State of California," and that "[e]very employee of the State of California or any place else has the right to … legal remedies."

52. **Request for Admission No. 52.** Admit that during the October 11, 2024 meeting, You stated, "Of course you have the right. Of course you have the right."

53. **Request for Admission No. 53.** Admit that during the October 11, 2024 meeting, immediately after Plaintiff stated that the staff's "fear of legal action … [i]s why I got decelerated," You stated, "I know I heard her say it."

54. **Request for Admission No. 54.** Admit that during the October 11, 2024 meeting, You stated, "I think she misspoke earlier," and that Dean Liu "was not saying that … exercising your legal right as an employee … [is] … of itself intimidation."

55. **Request for Admission No. 55.** Admit that during the October 11, 2024 meeting, You characterized Dean Liu's statement by saying that what Dean Liu "meant is that the staff felt intimidated by it."

56. **Request for Admission No. 56.** Admit that during the October 11, 2024 meeting, You stated, "certainly staff were feeling intimidated."

57. **Request for Admission No. 57.** Admit that during the October 11, 2024 meeting, You stated that the discussion was "a lot more informative to me than what might be 100 pages" of written description, and that the meeting had been "enlightening" to You.

58. **Request for Admission No. 58.** Admit that during the October 11, 2024 meeting, in response to Plaintiff's statement that Defendant Canny had discriminated against him, You did not state that the statement was untrue.

59. **Request for Admission No. 59.** Admit that the departmental recommendation You reviewed based the deceleration on reports of Plaintiff's conduct by or concerning staff, and not on any deficiency in Plaintiff's teaching or research.

60. **Request for Admission No. 60.** Admit that during the October 11, 2024 meeting, when Plaintiff asked what specific staff interactions underlay the deceleration, You stated that they "must be explained in the chair's memo because that's what this paragraph refers to."

61. **Request for Admission No. 61.** Admit that during the October 11, 2024 meeting, regarding the matters underlying the deceleration, You stated, "perhaps I did not get to the bottom of this thing that happened before I was here as soon as I should have."

62. **Request for Admission No. 62.** Admit that during the October 11, 2024 meeting, regarding the staff feeling intimidated, You stated that "that may very well be true, that that was not your intention."

63. **Request for Admission No. 63.** Admit that during the October 11, 2024 meeting, You stated that You and Dean Liu were "going to talk with each other … at some point soon."

64. **Request for Admission No. 64.** Admit that, in the email thread concerning the recording of the October 11, 2024 meeting, Plaintiff wrote that it would be better to go to Executive Vice Chancellor and Provost Hermalin, rather than to the Office for Faculty Equity and Welfare (OFEW), to address the issues raised.

65. **Request for Admission No. 65.** Admit that the March 18, 2025 email to Plaintiff concerning his merit review case was signed "Jennifer and Tsu-Jae."

66. **Request for Admission No. 66.** Admit that You did not refer Plaintiff's objections concerning the October 11, 2024 meeting or his merit review to any Academic Senate process.

67. **Request for Admission No. 67.** Admit that You did not consult the Executive Vice Chancellor and Provost regarding the process for addressing the issues raised at the October 11, 2024 meeting.

68. **Request for Admission No. 68.** Admit that the August 5, 2022 decision letter that You signed states that Plaintiff's research during the review period was "a good record of research and research recognition during the review period."

69. **Request for Admission No. 69.** Admit that the August 5, 2022 decision letter that You signed states that Plaintiff's teaching was "of tremendous value to the department," judges his teaching "to be good, but still in need of improvement," and judges his mentoring "to be strong."

70. **Request for Admission No. 70.** Admit that the August 5, 2022 decision letter that You signed judges Plaintiff's "record of service to the university as very good and his professional service as satisfactory during the review period."

71. **Request for Admission No. 71.** Admit that the August 5, 2022 decision letter that You signed describes Plaintiff as a faculty member "with good records of research and teaching and a strong record of mentoring, but with a record of service that does not meet the standards for a normal advance."

72. **Request for Admission No. 72.** Admit that the Recommendation You signed states that Plaintiff's "service to the university during the three-year review period is good," that Plaintiff "served on a variety of demanding department committees and on the College's Admissions Committee," and that Plaintiff "served on the Academic Senate Divisional Council for one year during the review period."

73. **Request for Admission No. 73.** Admit that the August 5, 2022 decision letter that You signed attributes that service shortfall to staff morale, stating that "the totality of Rao's departmental service includes a substantial erosion of staff morale and willingness to serve in certain roles," rendering his service "overall well below department[al] expectations."

74. **Request for Admission No. 74.** Admit that the August 5, 2022 decision letter that You signed identifies no action taken by Plaintiff that caused the "substantial erosion of staff morale" it describes.

75. **Request for Admission No. 75.** Admit that the departmental recommendation You reviewed states: "Rao did make positive contributions on both undergraduate study and graduate matters committees."

76. **Request for Admission No. 76.** Admit that the departmental recommendation You reviewed states: “most of these interactions occurred early in the current review period, and that Rao has improved his interactions with staff in several cases.”

77. **Request for Admission No. 77.** Admit that You co-founded Microsoft Research New England and the Theory Group at Microsoft Research, and served as Dean of the College of Computing, Data Science, and Society; and that Your decanal duties included applying the University’s faculty personnel standards to faculty personnel matters.