Satish Rao, Plaintiff, pro se
2421 Oregon St., Berkeley, CA 94705
(510) 882-5324 | satish0rao@gmail.com

November 24, 2026

The Honorable James Donato
United States District Court, Northern District of California

**Re: *Rao v. Regents of the University of California,* No. 3:25-cv-02385-JD – Plaintiff's discovery letter requesting an order compelling interrogatory answers, document production, and privilege logs on the disputes presented in ECF No. 95 (ECF No. 97)**

Dear Judge Donato:

Plaintiff certifies, under Paragraph 18 of the Standing Order for Discovery in Civil Cases and Civil L.R. 37-1, that he met and conferred with Defendants' counsel, who are located more than 50 miles away, by videoconference with lead counsel on September 23, 2026, and by conference call on November 2, 2026, and that the disputes below remain unresolved. They were first presented request by request in ECF Nos. 95-1 through 95-6, as ECF No. 76 at 8 directed. The disputed requests and Defendants' served responses are attached as Exhibit 1.

Plaintiff alleges that his 2021 merit review was decelerated by a half step on the basis of staff-interaction accusations, in retaliation for protected complaints and speech and because of his ancestry (ECF No. 69). The central deficiency is concrete. Canny states that he interviewed five staff members and received reports from approximately 8 to 10 faculty and staff, but his answers name none of those sources. The Regents identify no particular incident as the basis for the staff-interaction criticisms in the merit review; accounts of interactions appear elsewhere in the record, but Defendants have not identified any of them as a basis for those criticisms. Plaintiff seeks the names, the particulars, and the contemporaneous records – or verified explanations after reasonable inquiry. He does not ask the Court to find the accusations untrue or to revisit the personnel decision.

Defendants have produced 4,551 pages, much of them duplicates or Plaintiff's own documents; substantial completion is due December 11 (ECF Nos. 86, 90), but the interrogatory answers are

due regardless of that schedule. Plaintiff has narrowed the requests by subject, custodian, period, and search terms (ECF Nos. 95-3 to 95-6, Ex. A); proposed redaction and pseudonymization; offered staged comparator discovery; and remains willing to enter a protective order for genuinely confidential third-party information in personnel, comparator, and student records, provided that information he has independently of discovery, and reasonable contact with witnesses, remain unrestricted. He does not seek privileged legal advice or new institutional records or statistical analyses. If the Court finds any category disproportionate, Plaintiff asks that it order an appropriately narrower production rather than deny discovery of it altogether.

## I. The sources, the incidents, and the records (ECF Nos. 95-1, 95-2, 95-4, 95-5)

**A. Canny will not name the people who supplied the accusations (Canny Interrogatories 2, 3; Regents Interrogatory 3; Liu Interrogatory 2).** Canny's verified answer to Interrogatory 1 states that he interviewed five staff members between May 1 and June 22, 2021, and "received reports of unprofessional behavior from approximately 8 to 10 faculty and staff members," and information from Whitlock's interviews. In his questionnaire he described three sources of information – "5 staff for myself, the ERC staff interviews, and Eugene Whitlock's interviews with staff" (REGENTS_000523) – wrote that he "took notes for myself," and said Whitlock had advised him the reports were "so pervasive in his interviews that it was not critical to document each incident in detail." Asked what he meant by "demeaning of colleagues," he answered, "I am not going to recount the incident." (REGENTS_000520.) Interrogatory 2 asks who those people are and whether each was someone Plaintiff had complained about; Interrogatory 3 asks who "warned" Canny about Plaintiff when he became Chair (ECF No. 38, Ex. 5a at 15), and what was said, when, and how; Regents Interrogatory 3 asks which staff the Regents contend were affected. Defendants refused all three on non-party privacy grounds; as to Canny Interrogatory 2, they said on October 27 that disclosure would require a protective order while "still assessing whether we can disclose any identities," identifying no harm and proposing no terms. Canny thus names not one of the five staff, the 8 to 10 faculty and staff, or the people who warned him, and attributes no particular com-

plaint to anyone. He does not say the identities are unknown; citing privacy, he "will not respond." Similarly, Dean Liu admits telling Plaintiff, "Other staff observed the way you talked to Chris. You raised your voice" (Liu Resp. to RFA 133), yet answers Interrogatory 2 that she is "not privy to the identities."

Canny swore that he "relied upon those communications and information in preparing the departmental recommendation." Their identities determine whether they were independent, had firsthand knowledge, or were people Plaintiff had complained about – whether Canny's stated basis can be tested at all – and Plaintiff cannot depose them without names. Fed. R. Civ. P. 26(b)(1). These are the sources of the accusations behind a personnel recommendation, not witnesses selected by counsel for litigation. Rule 26(c) requires good cause shown by particularized harm, *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002); "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). Defendants identify no witness who has sought protection and no harm from identification to Plaintiff, who has never supervised staff and has no authority over any possible staff witness. If any source is a junior faculty member whose review Plaintiff could take part in, Plaintiff would not oppose a tailored order for that person. If the Court sees a need for protection, it could, in its discretion, order Defendants to identify every source now, with Plaintiff not disclosing newly learned identities to third parties; within seven days Defendants would identify any witness for whom continued protection is sought, the particularized harm (in camera if necessary), and the restriction sought, and the restriction would lapse for any witness not named. Plaintiff could use the information to prepare this case, including contacting witnesses. No restriction should reach what Plaintiff knows independently of discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34, 37 (1984).

Interrogatory 3 also asks for facts – what was said, when, and how – which a privacy objection to names does not, without more, justify withholding. Fed. R. Civ. P. 33(b)(3). The warnings date to 2019, when Canny declined to reappoint Plaintiff to the Undergraduate Study Committee, the

first committee exclusion pleaded (TAC para. 39). On Regents 3, if the review made no person-by-person accounting of affected staff, as Defendants' October 27 position suggested, the Regents should say so under oath. Dean Liu should identify the observers, or the sources of her statement and why the observers cannot be identified.

**B. Defendants identify no particular incident supporting the merit-review criticisms (Regents Interrogatory 2; Liu Interrogatory 4).** Each interrogatory must, "to the extent it is not objected to, be answered separately and fully." Fed. R. Civ. P. 33(b)(3). The merit-review letters characterize Plaintiff's staff interactions but attach no specific incident to those characterizations, and the answers supply none. Asked for each incident the Regents contend supported the deceleration, the Regents answer that "a large number of staff reported having poor interactions with Plaintiff" and that the information available "does not permit Defendant to identify every date, participant, or firsthand witness for each interaction" – yet they identify none, and, unlike their answers to Interrogatories 4, 6, and 11, do not say a reasonable search was made. Asked for the interactions supporting the "hostile work environment" statement she signed, Dean Liu cites Canny's characterizations, Whitlock's interviews, and Plaintiff's 484-page response without identifying a single interaction or participant; she "did not independently investigate the underlying staff interactions but relied on the information in Plaintiff's merit review." The Regents and Dean Liu can resolve this by serving verified supplemental answers that identify each incident, its date, participants, any record, and observers – or that state the inquiry made (the persons consulted, including Canny and Whitlock, and the records examined, including interview notes) and which incidents cannot be identified.

**C. The underlying records (RFPs 39, 57, 59, 60, 63, 64).** Canny wrote that he "took notes for myself," yet no notes, calendar entries, or communications from his five staff interviews have been produced; a diligent search includes "calendars and diaries" (Discovery Standing Order para. 3), and a burden objection cannot justify withholding responsive materials known to the party (para. 6). RFP 39 seeks the named participants' contemporaneous notes and minutes on the specific matters

at issue, 2018-August 2024. RFP 64 seeks existing records applying to Plaintiff the phrases “hostile work environment,” “bullying,” “demeaning and disruptive behavior,” “staff morale,” and “criticism of higher administration” used in his merit, deceleration, and reconsideration materials. RFP 63 seeks the CS70 instructors’ and Undergraduate Studies Committee’s records on the proposed student-run course and its review, whenever dated – the matter from which the alleged Plaintiff-Hunn interaction arose. RFPs 57, 59, and 60 seek the evidence for allegations described in the OPHD Report of Investigation in Case No. 2021-UCB-00381, whether or not those allegations figured in the merit review: the witnesses and firsthand accounts of the two alleged “yelling” incidents, with “EECS Faculty One” and with a staff member (RFP 57); the incident in which a faculty member allegedly “left the meeting” (RFP 59); and any document supporting the accusation that Plaintiff would be biased or misuse data, other than documents repeating it (RFP 60). If none exist after a reasonable search, Defendants should say so and describe the search.

## II. Three other incomplete answers (Regents Interrogatories 6, 7, 10) (ECF No. 95-2)

**Regents 6:** the answer states the Regents are “unable to determine” whether the 2021 and 2022 Targeted Off-Scale Program (TOP) increases were denied automatically; Defendants offered on October 27 to amend but have not. To show whether a denial occurred and who or what determined it, the answer should state for each year whether the increase was paid, the criterion applied, when, and by whom.

**Regents 7:** the answer names three OPHD employees but not who decided to open, authorize, or escalate Case No. 2022-UCB-00486. It should identify those persons and their roles, and state separately the dates the report was received, the case opened, and the investigation authorized; OPHD’s case log, which records the case’s phase changes and dates (REGENTS_003285-87), is part of a reasonable inquiry.

**Regents 10:** naming the nine Budget Committee members, as Defendants offered but have not yet

done, would not say who proposed, drafted, or approved the language characterizing Plaintiff in the June 23, 2022 and May 28, 2024 letters; the letters' drafts, version histories, and the emails or systems through which drafts were exchanged, and asking each member, are a reasonable inquiry.

## III. Counsel, protected activity, complaint handling, and preservation (RFPs 18, 23, 26, 28, 32-34, 38, 75, 82, 83, 91) (ECF Nos. 95-1, 95-3, 95-5)

**Counsel.** Defendants declined to respond to the Legal Affairs requests (RFPs 28, 33, 34, 38), particularly on privilege grounds. Plaintiff does not here seek privileged advice, and reserves any challenge to privilege, including waiver. But a privilege objection does not excuse a search: responsive non-privileged documents must be produced, and each withheld communication logged with all persons involved, the date, and the subject. Discovery Standing Order para. 7; Fed. R. Civ. P. 26(b)(5)(A). Defendants' November 6 log does not identify Mr. Robinson or Professor Wagner in any entry, and ten entries name the lawyer only as "Legal Counsel," so Plaintiff cannot tell whether a search was made or what it found. Wagner told the University's investigator that he "consulted David Robinson in Legal Affairs" about Plaintiff's retaliation concern and recounted Robinson's advice (REGENTS_001284). The underlying facts – who communicated, when, and on which general matters – are discoverable even where the content of advice is protected. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). Plaintiff narrows RFP 38 to its seven enumerated matters and RFP 34 to Legal Affairs' communications with the Center for Student Conduct on the identified CS70 matters (student identifiers redacted).

**Protected activity and complaint handling.** RFP 32 seeks administrators' communications about Plaintiff's protected complaints and speech and whether to take adverse action, with named custodians, 2018-2024. RFP 18 seeks Canny's editing and circulation of Plaintiff's emails, including the marked-up compilation, 2019-August 2024. RFPs 23 and 26 seek the routing and handling of Plaintiff's 2018-19 complaint and of the staff questionnaire; any material withheld under an ombuds-confidentiality claim should be identified by category. RFP 75 seeks complaints or crit-

icism of Canny's conduct as Chair communicated to Deans Liu and Chayes, including responses to their February 16, 2021 solicitation of faculty comments on Canny's possible appointment as EECS Chair; it bears on whether the deans could reasonably rely on his account without investigation. Plaintiff narrows it to January 2019-January 2022; custodians Liu, Chayes, and College of Engineering Academic Affairs; terms Canny AND (complain* OR concern* OR criticism OR nominat*); the solicitation responses reviewed regardless of hits; nominators' identities redacted.

**Records access and preservation.** RFPs 82-83 concern the University's position that Plaintiff could not share his own review file with "anyone other than your recognized agent," and the PERB charge challenging it; the University withdrew the position on August 18, 2025 (REGENTS_004386), and how it was adopted, applied, and withdrawn bears on retaliation. RFP 91 is narrowed to non-privileged preservation facts: dates, custodians, systems, and the response to Plaintiff's preservation requests, including that of March 2023.

## IV. Comparators and the Bullying Guidelines (RFPs 68, 74, 85-88, 90, 93-95) (ECF No. 95-4)

The comparator requests test whether the grounds and the 2019 Guidelines used against Plaintiff were applied to other faculty – central to the disguised-discipline, equal-protection, and First Amendment claims. The Court found it sufficiently alleged that the deceleration "was disciplinary" (ECF No. 53 at 12), and the Guidelines Defendants invoked – whose adoption Plaintiff disputes (RFPs 93-95) – themselves say that merit review "is not intended nor should it be used to discipline behavior," that behavior bears on a review when it adversely affects research, teaching, or service, and that any such assessment "should be properly documented" so "that the candidate (i) understands the basis for the assessment and (ii) can offer a rebuttal" (Sec. 8.2, REGENTS_000013-16). Plaintiff proposes to proceed in stages: first, existing EECS outcome records for ladder-rank faculty, July 2018-July 2024, pseudonymized, identifying matters in which staff-interaction, bullying, hostile-environment, or speech-related concerns were raised, whether or not adverse action

followed (RFPs 85, 87, 88); the procedural protections, including any pre-deprivation review, afforded in resulting adverse personnel actions from January 2020 (RFP 86); and uses of the Guidelines (RFP 68); then underlying documents only for matters meeting those criteria. Records within the requests' full scope (the College of Engineering and the College of Computing, Data Science, and Society) would follow the EECS results and further conferral; Plaintiff does not waive that scope. RFP 85 seeks the dates, allegations, and outcomes of OPHD matters concerning other faculty, not identities; RFP 90 seeks existing annual counts, to the extent maintained. Plaintiff does not ask for new tables or analyses. RFPs 93-95 concern the adoption of the Guidelines, invoked against Plaintiff in the merit decision (REGENTS_004495-96), and RFP 74 the versions of the governing standards in force, 2018-2024.

## V. The teaching-evaluation posting practice (RFPs 78, 79, 81) (ECF No. 95-6)

Defendants admit that EECS "distributed faculty teaching evaluations through coordination with a student organization" and that Plaintiff raised his concerns about the practice (ECF No. 79, paras. 84-85), and the Regents' verified answer says Canny's 2021 recommendation rested in part on "teaching evaluations," though the decisions rated Plaintiff's teaching "good" (ECF No. 38, Ex. 3d at 3; Ex. 4c at 1). The practice predates the 2021 review and affected the evaluations used in it (the requests begin in 2016 for that reason); Plaintiff's later poll and Canny's defense of the practice bear on retaliation and the reconsideration. RFP 78 seeks the department's communications with central administration on the practice, including any approval or privacy analysis; RFP 79, Plaintiff's objections, the faculty poll, and the decision to continue; RFP 81, Canny's communications on continuing it. Plaintiff narrows RFPs 79 and 81 to one collection from Canny, Wagner, and the chair's office, 2016-2023, and RFP 78 to central-administration review or approval of the practice, whenever dated.

## VI. Defendants' objections and search obligations

Defendants' responses to the 31 disputed requests for production are largely the same stacked objections: every one asserts burden or disproportionality, attorney-client privilege or work product, and vagueness or compound form, and declines to respond to the request as propounded; most add non-party privacy or confidentiality, and some relevance. Privacy is only one of several asserted grounds; six responses assert no privacy or confidentiality objection at all (RFPs 18, 23, 28, 33, 74, 93). Objections must "state with specificity the grounds" (Fed. R. Civ. P. 34(b)(2)(B)); "[n]o generalized claims of privilege or work product protection are permitted" (Discovery Standing Order para. 7); and a burden or overbreadth objection is not a valid reason to withhold responsive materials known to the party (para. 6). Plaintiff has offered a tailored answer to each ground – custodians, dates, terms, and staging; standalone restatement; review and a log; pseudonymization or a protective order – and remains willing to proceed by agreed search protocol. Defendants' proposed narrowing to documents "directly related to" what the 2021 decision referenced would exclude the committee exclusions, investigations, reconsideration, and comparators. None of these responses has been amended, and neither production identifies which documents, if any, respond to them. Defendants have not provided the custodian and source of produced items, which is due at production (para. 4), or stated whether responsive materials are withheld on the basis of each objection and the scope of any withholding (Rule 34(b)(2)(C)). Written confirmation of completeness after a diligent search (para. 2) will be due once production is complete.

## Relief requested

Plaintiff asks the Court to order:

1. **Within 14 days:** verified answers to Canny Interrogatories 2 and 3 and Regents Interrogatory 3, identifying the sources to Plaintiff and, for Canny Interrogatory 3, what was said, when, and how (with any confidentiality restriction the Court finds warranted under the procedure in Part I.A); verified supplemental answers to Regents Interrogatories 2, 6, 7, and 10

and Liu Interrogatories 2 and 4, stating, where information is unavailable, the inquiry made, including the persons consulted and records examined; amended responses stating whether responsive materials are withheld on the basis of each objection and identifying the scope of any withholding; and a privilege log under para. 7.

2. **Within 21 days, or as the Court directs:** production of responsive, non-privileged documents under RFPs 18, 23, 26, 28, 32-34, 38, 39, 57, 59, 60, 63, 64, 74, 75, 78, 79, 81-83, 91, and 93-95 within the scopes above, crediting documents already produced, with the custodian, source, and location of each produced item by Bates range, including for REGENTS_000001-004551 (para. 4).
3. **Within 45 days:** the complete first stage of comparator production (RFPs 68, 85-88, 90), with written confirmation that it is complete after a diligent search (para. 2), and the parties to meet and confer on any further stage within seven days after that confirmation.
4. **Promptly after final production:** written confirmation of completeness after a diligent search (para. 2).

Respectfully submitted,

/s/ Satish Rao
Satish Rao, Plaintiff, pro se

Exhibit 1: the disputed requests and Defendants' served responses (excerpts).